CONTINENTAL PIPE MFG. CO. v. POE, Collector of Internal Revenue.

No. 6669.

Circuit Court of Appeals, Ninth Circuit.

June 24, 1932.

Bronson, Jones & Bronson, H. B. Jones, and Robert E. Bronson, all of Seattle, Wash., for appellant.

Anthony Savage, U. S. Atty., Jeffrey Heiman, Asst. U. S. Atty., and John R. Wheeler, Sp. Atty., Bureau of Internal Revenue, all of Seattle, Wash. (C. M. Charest, Gen. Counsel. Bureau of Internal Revenue of Washington, D. C., of counsel), for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and ST. SURE, District Judge.

ST. SURE, District Judge.

Appellant, a Washington corporation, sued in the District Court to recover from appellee income taxes assessed by the Commissioner of Internal Revenue for the years 1924 and 1925.

Appellee urges at the outset that there is no question before us for review, as no proper bill of exceptions has been settled. The point is without merit. The record shows that the District Court filed a written opinion, making certain specific findings of fact, which were adopted as findings in the judgment; that prior to the entry of judgment appellant moved for additional findings, presenting the propositions of law involved in the case, some of which were made by the court; that exceptions were taken and preserved by appellant to certain of the court's findings, and also to its refusal to find as requested by appellant. Upon such a record this court may determine whether the findings support the judgment.

In 1924, appellant, a pipe manufacturing concern, did certain rehabilitation work for the Fruitland irrigation district, a Washington corporation, receiving in payment certain bonds of that district. Appellant suffered a loss on these bonds, and took a deduction in its income tax for 1924, which was disallowed by the Commissioner but sustained by the District Court. No appeal was taken from this portion of the judgment, and we are here concerned only with the deductions claimed for the year 1925.

In 1925, the Fruitland district was re-

organized and refinanced in an attempt to put it on a basis which would enable it to pay its bonded indebtedness. The amount of the assessment levied on and paid by appellant for this purpose was $11,496. In computing its income tax for 1925, appellant deducted this amount as an "ordinary and necessary" business expense under section 986, 26 USCA, which reads in part as follows:

"(a) In computing the net income of a corporation subject to the tax imposed by section 981 of this title there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity."

The Commissioner denied the deduction on the ground that it was a capital expenditure, and not an ordinary and necessary business expense.

In 1924, appellant sold supplies to the Intermountain Water & Power Company, receiving in payment bonds of that company of the par value of $200,000. The bonds were entered on appellant's books at $160,000. The bonds depreciated in value. At the end of 1925, the total indebtedness of this company to appellant was $191,442.13. To take care of a possible loss on this account, appellant set up on its books for the year 1925 a special reserve of $100,000, and later claimed the item as an allowable deduction under section 986, 26 USCA, which reads as follows: "(5) Debts ascertained to be worthless and charged off within the taxable year (or in the discretion of the commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the commissioner may allow such debt to be charged off in part."

The Commissioner also denied this deduction on the ground that the debt was neither worthless nor charged off.

The two questions before the court here are:

(1) Was appellant entitled to deduct the $11,496 paid to the Fruitland irrigation district as an "ordinary and necessary" expense of appellant's business?

(2) Was appellant entitled to deduct the $100,000 alleged to have been charged off on account of worthlessness, in whole or in part, of the obligations of the Intermountain Water & Power Company?

1. In respect to the first question, the District Court found:

"That in connection with the difficulties of the Fruitland Irrigation District, a bondholders' protective committee was organized in 1925 for the purpose of reorganizing the district, and that during the year 1925 the plaintiff advanced to such committee the sum of $11,496, which advance was used for expenses of the committee, such as salary for secretary and land salesmen, and travelling expenses, and was charged by the plaintiff to expenses of its business operations; that no part of such advance has ever been repaid to the plaintiff."

"The court further finds that for the calendar year 1925 the plaintiff filed with the defendant its income tax return, and in computing its net return deducted as an expense, loss sustained on account of the bonds of the Fruitland Irrigation District in the sum of $11,496, which it was compelled to pay as an assessment to the bondholders' committee. * * * *"

The Commissioner disallowed the item of $11,496, holding it to be an addition to capital investment in accordance with article 292, Regulation 65, of the Treasury Department. The ruling of the Commissioner was correctly sustained by the District Court. Treasury Regulation 65, which has the force of law, provides that: "Amounts to be assessed and paid under an agreement between bondholders or stockholders of a corporation to be used in a reorganization of the corporation are investments of capital and not deductible for any purpose in returns of income." The Board of Tax Appeals has held that "expenses of organization and refinancing are not deductible as ordinary and necessary operating expenses." Grain King Manufacturing Co., Petitioner, v. Com'r., 14 B. T. A. 793, and cases cited therein.

2. In passing upon the second question, we have considered the evidence presented by the record. Appellant, in 1924, sold supplies to the Intermountain Water & Power Company, and acquired bonds of said company to the extent of $200,000 par value. These bonds were acquired at 80 and entered on the books of appellant at $160,000. Appellant also, on December 31, 1925, held notes of the

Intermountain Water & Power Company to the extent of $36,739.29 and an open account for goods, wares, and merchandise sold in the sum of $14,778.73, making the total indebtedness under the bond issue, notes, and open account $191,442.13.

In 1924, the Intermountain Water & Power Company had a practical monopoly in furnishing water to various oil companies in the Teapot Dome and Salt Creek oil fields, Wyo. In 1925, other sources of water supply developed, and the company lost its principal customers, and the bonds, notes, and accounts were substantially impaired, to the extent, it is claimed, of at least $100,000.

Appellant urges that its financial condition throughout the year of 1925 was such as to seriously impair the value of its unsecured obligations. As a result of its investigation and consideration of the situation, "its officers determined before the end of the year upon a deduction of $100,000 as a reserve for loss on account of the Intermountain Water & Power Company obligations." The actual entry in its books was made on February 26, 1926, reading as follows: "Special reserve for the Intermountain Water & Power Company's stock, bonds, and notes, and accounts receivable, for $100,000."

█ "The prudent business man often sets up reserves to cover contingent liabilities. But they are not allowable as deductions." They must be established as a matter of law or undeniable fact. Lucas v. American Code Co., 280 U. S. 445, 452, 50 S. Ct. 202, 74 L. Ed. 538.

The trial court found: "That the special reserve of $100,000 deducted by the plaintiff on account of stocks, bonds, notes and accounts receivable of the Intermountain Water & Power Company on February 24, 1926, was made on the books of the company before they were closed for the year 1925, and that the financial and physical conditions of the Intermountain Water & Power Company were known to Joe Long the president of the plaintiff, and to H. K. Munroe, the secretary and vice-president and officer having charge of the books of the plaintiff prior to the end of 1925."

And in this connection the court further found that: "No resolution of the board of directors was considered or passed at any time, directing 'loss on Intermountain Water & Power Co., $100,000' to be charged on the books of the company as of December 31, 1925, or at any other date, and *no such loss at the time had in fact been sustained.*" (Italics supplied.)

█ In order for the taxpayer to secure a deduction of a worthless debt, he must ascertain its worthlessness and charge it off in the same taxable year. Cross v. Commissioner of Internal Revenue (C. C. A.) 54 F.(2d) 781; American Sav. Bank & Trust Co. v. Burnet (C. C. A.) 45 F.(2d) 548. The fact that an attempt had been made to use the reserve method for bad debts does not change the rule. Whether or not the obligations were worthless, in whole or in part, presented a question of fact. The decision of the Commissioner denying the deduction is prima facie evidence that the tax was correctly assessed. Niles Bement Pond Co. v. U. S., 281 U. S. 357, 361, 50 S. Ct. 251, 74 L. Ed. 901; see United States v. Rindskopf, 105 U. S. 418, 26 L. Ed. 1131. The burden of proof was upon appellant. As we have seen, the District Court found that the loss had not in fact been sustained. A careful examination of the record fails to furnish an accurate measurement of the extent to which the obligations were worthless. It cannot be said that the loss claimed was as a matter of law or of undeniable fact, sustained in 1925. The evidence amply supports the finding of the trial court, that, "from March 13, 1926, until July 18, 1927, plaintiff sold at 72½% to 90% of the par value of these bonds to the amount of $51,500, amounting to $41,905. On December 31, 1925, the further sum of $22,000 had been transferred to one Barr in satisfaction of a claim against it; and on January 26, 1926, $2,500 of the bonds were transferred to Brook on account of commissions on sales. * * * *"

We are at a loss to understand, as was the trial judge, how appellant could claim that it had ascertained the bonds specified to be worthless in 1925, when thereafter in 1926, and until 1927, it had sold some of these same bonds at an advanced price. Uncertainty likewise applies to all of the proof offered by appellant to show the worthlessness of the whole or a part of the obligations involved.

Affirmed.