## FAIRLESS v. COMMISSIONER OF INTERNAL REVENUE.

Nos. 6314–6319.

Circuit Court of Appeals, Sixth Circuit.
Nov. 8, 1933.

Albert B. Arbaugh, of Canton, Ohio (Homer E. Black, and Black, McCuskey, Ruff & Souers, all of Canton, Ohio, on the brief), for petitioners.

A. D. Sharpe, of Washington, D. C. (Sewall Key, Helen R. Carloss, C. M. Charest, and L. M. Berrien, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The petitioners in the six cases, grouped under the above style, were all stockholders in the Union Finance Company, an Ohio corporation, which by corporate action taken in October, 1922, transferred all of its assets to the Metropolitan Securities Company on January 4, 1923. The transferor in exchange received a certificate for 5,886 shares of the preferred stock of the purchasing company, and shortly thereafter distributed the stock through a transfer agent to its own stockholders, share for share. The Union Finance Company thereupon ceased to do business, though it did not legally go out of existence until its charter was canceled by the state in 1925.

In its tax return for 1922, the Union Finance Company claimed exemption in the sum of $62,484.14 for bad debts. The respondent upon an audit of its return dis-allowed the deduction, and determined a deficiency for the years 1921 and 1922. Additional taxes due to such deficiency were assessed in 1926, and, payment not being made, the respondent asserted liability against the petitioners as transferees, which action was sustained by the decisions of the Board of Tax Appeals here sought to be reviewed.

Three questions are presented to us for decision: (1) Are stockholders of a corporation which transferred all of its assets to another corporation in exchange for stock, and thereupon ceased to do business and distributed the stock received to its own shareholders, liable as transferees under section 280 of the Revenue Act of 1926 (26 USCA § 1069 and note)? (2) If liable, are they severally liable for the tax imposed to the extent of the value of the assets received or only for their proportionate share of such tax? (3) Was the respondent right in refusing to allow the deduction for bad debts claimed in the 1922 return?

The pertinent provisions of section 280, printed in the margin,[1] provide for the assessment and collection in the same manner as other deficiencies, of deficiencies in respect of any liability at law or in equity of a transferee of the property of a taxpayer, and define transferee to include distributees. The petitioners contend that, since all of the physical assets and property of the Union Company were turned over to the Metropolitan, the latter is the transferee against which the deficiency should have been declared. We see no merit to this contention. We find nothing in the statute which limits collection of defaulted taxes owing by a dissolved or abandoned corporation to the transferees of its physical assets. Certainly the transferees of a mere holding company which has no property other than shares of stock are not immune from the operation of the section. When the Union Company sold its physical property to the Metropolitan, it became own-

---

[1] Sec. 280 "(a) The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds).
"(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed upon the taxpayer by this chapter or by any prior income, excess-profits, or War-Profits Tax Act. * * *
"(f) As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee."
U. S. C. Appendix, title 26, § 1069 (26 USCA § 1069).

er of Metropolitan stock, against which the tax liability could have been asserted. Distraint against the Union Company was rendered futile by its distribution of the stock to its stockholders. This is clearly a situation which section 280 was intended to meet, and we have no doubt that the tax can be assessed against and collected from the Union's stockholders to the extent of the assets they received. Hunn v. United States, 60 F.(2d) 430 (C. C. A. 8); Pierce v. United States, 255 U. S. 398, 41 S. Ct. 365, 65 L. Ed. 697; Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; Russell v. United States, 278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255. It is not material to this inquiry whether or not the Metropolitan Company could also be held liable. Pierce v. United States, supra; Roche v. Commissioners, 63 F.(2d) 623 (C. C. A. 5). Nor do we think that there was obligation on the part of the respondent to have first pursued a manifestly futile remedy against the distributing corporation.

The decision of the Second Circuit Court of Appeals in Reid Ice Cream Corporation v. Commissioner, 59 F.(2d) 189, is not opposed to our conclusion. The taxes there involved were taxes upon the profit or income realized by the selling company upon the sale itself. It was held that where a corporation transfers assets relative to which a tax liability already exists, without reserve for the payment of tax, the claim follows the transferred assets, and the transferee becomes liable to the extent of the assets received, but, where there is no existing claim against the assets and one arises thereafter only out of and because of the sale, there is no liability. The vendee is not obliged to pay his vendor's tax.

■ The second question is conclusively answered by the case of Phillips v. Commissioner, supra. It was there held by the Supreme Court that one who receives corporate assets upon dissolution is severally liable, to the extent of the assets received, for the payment of the taxes of the corporation; and other stockholders or transferees need not be joined. Whatever may be the petitioners' right to contribution against other stockholders who have also received shares of the distributed assets, the government is not required in collecting its revenue to marshal the assets of the dissolved corporation so as to adjust the rights of its various stockholders. There is nothing in section 280 to indicate that Congress intended to limit the procedure in this way.

■ It is conceded that debts deducted by the finance company on its 1922 return were not charged off upon its books during the taxable year by formal entries. It is claimed, however, that what was done was to all intents and purposes equivalent. A list of accounts receivable was by the Union Company submitted to the officers of the Metropolitan while negotiations were in progress, and the items in dispute were marked by the Metropolitan as worthless. Thereupon they were listed as bad debts upon the 1922 return.

Section 234 (a) (5), of the Revenue Act of 1921 (42 Stat. 255) provides that, in computing the net income of a corporation subject to the tax imposed by section 230, there shall be allowed, as deductions, "Debts ascertained to be worthless and charged off within the taxable year." It has been said by this and other courts too often to require repetition, that a debt may be deducted as worthless only when it is shown (1) that it was ascertained to be worthless, and (2) that it was charged off within the taxable year. Duffin v. Lucas, 55 F.(2d) 786 (C. C. A. 6); Commissioner v. Liberty Bank & Trust Co., 59 F.(2d) 320 (C. C. A. 6); Domhoff & Joyce Company v. Commissioner, 50 F.(2d) 893 (C. C. A. 6); Continental Pipe Mfg. Co. v. Poe, 59 F.(2d) 694 (C. C. A. 9); Jones v. Commissioner, 38 F.(2d) 550 (C. C. A. 7); Avery v. Commissioner, 22 F.(2d) 6, 55 A. L. R. 1277 (C. C. A. 5). The language of the statute is both clear and specific. It is difficult to see how the judgment of a prospective purchaser, no matter how expressed, can be made the equivalent of a specific act definitely required of the taxpayer as a condition precedent to the allowance of his claim, even though it may have some bearing upon the question of ascertainment. So far as the original taxpayer here is concerned there is nothing in the record to show that anything was done by it until it made its 1922 return, after the close of the taxable year. The Board, because of the fact that the books were not closed at the end of 1922, was not disposed to quibble over the omission of the charge-off in view of the fact that the debts were deducted on the return. Since deduction for bad debts may not be had unless claimed in the return, and since the return is invariably made after the close of the taxable year, to hold the claim of deduction equivalent to the required charge-off would be to render nugatory the statutory requirement. We are cited to decisions of the Board in other cases to the effect that the charge-off of debts may take other forms than entries on the books of the taxpayer, may be effected

in a variety of ways, and yet be sufficient for substantial compliance with the statute. This may be conceded without its having any bearing upon the statutory requirement that the charge-off be made within the taxable year. The rule that statutes must be given reasonable interpretation is invoked only when there is room or necessity for interpretation. The language here is unequivocal. Nor does its strict application seem to us unreasonable. It was clearly the purpose of the Congress to condition allowance of deduction for bad debts upon the perpetuation of evidence that they were ascertained to be worthless within the taxable year, and upon some specific act of the taxpayer clearly indicating their abandonment as assets. Undoubtedly Congress was competent to make such provisions, and their value in preventing evasion and fraud is obvious. The Union Finance Company failed to bring its claimed deductions within the allowable class.

Aside from what has been said on the question of charge-off, we think the petitioners' proof fell short of showing that the debts were ascertained to be worthless within the taxable year. Some of the debtors were in bankruptcy, but there is no showing as to the value of their estates, or whether any dividends had been or were likely to be declared. The evidence shows that the Union Company held customers' accounts receivable as collateral. There is no showing as to the value, if any, of such collateral, or whether any effort had been made to collect upon it. In this state of the record we are unable to say that the Board of Tax Appeals was in error in its decisions sustaining the respondent. Collin National Bank v. Commissioner, 48 F.(2d) 207 (C. C. A. 5); Stranahan v. Commissioner, 42 F.(2d) 729 (C. C. A. 6).

The decision of the Board of Tax Appeals in each of the six cases is affirmed.