## HADLEY FALLS TRUST CO. v. UNITED STATES.
### No. 6702.

District Court, D. Massachusetts.
Feb. 14, 1938.

Ward F. Porter and Howard C. Connor, both of Boston, Mass., for plaintiff.

Francis J. W. Ford, U. S. Atty., and Arthur L. Murray, Sp. Asst. to U. S. Atty.

McLELLAN, District Judge.

The plaintiff seeks recovery of corporate income taxes paid for the years 1930 and 1931.

Statements of fact herein are intended as findings of fact, and statements of law as conclusions of law, in accordance with U.S.C.A. title 28, § 764.

The case was heard upon a "Stipulation of Facts," oral testimony, and certain exhibits. It is agreed that where the "Stipulation of Facts" and the oral testimony differ, the stipulation is to prevail. Accordingly, the facts, to the extent that they there appear, are found to be as stipulated.

Several questions arise with reference to the taxes sought to be recovered, and various statutory provisions and four Regulations are cited in the briefs.

The Revenue Act of 1928, c. 852, § 23, 26 U.S.C.A. § 23 and note, so far as relied upon, provides:

"In computing net income there shall be allowed as deductions:

"(a) *Expenses.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condi-

tion to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * *

"(f) *Losses by corporations.* In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise. * * *

"(j) *Bad Debts.* Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

Article 191 of Regulations 74, promulgated under the Act of 1928, provides, in substance, that bad debts may be treated in either of two ways: (1) By a deduction from income in respect of debts ascertained to be worthless in whole or in part; or (2) by a deduction from income of an addition to reserve for bad debts.

Article 193 of the Regulations states that where "the creditor buys in the mortgaged * * * property, loss or gain is realized by the amount of those obligations of the debtor which are applied to the purchase or bid price of the property * * * and the fair market value of the .property."

Articles 195 and 282 of Regulations 74 read in part as follows:

"Article 195. *Reserve for bad debts.*— Taxpayers who have, prior to 1928, established the reserve method of treating bad debts and maintained proper reserve accounts for bad debts, or who, in accordance with article 191, or upon securing permission from the Commissioner, adopt the reserve method of treating bad debts, may deduct from gross income a reasonable addition to a reserve for bad debts in lieu of a deduction for specific bad debt items.

"What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity. A taxpayer using the reserve method should make a statement in his return showing the volume of his charge sales (or other business transactions) for the year and the percentage of the reserve to such amount, the total amount of notes and accounts receivable at

the beginning and close of the taxable year, and the amount of the debts which have been ascertained to be wholly or partially worthless and charged against the reserve account during the taxable year."

"Article 282. *Capital expenditures.*— * * * The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense. * * *"

The plaintiff kept its books of account and records on a cash basis and its income tax returns for the years 1930 and 1931 were made on that basis.

### The 1930 Taxes.

I state first such facts established by the stipulation, the exhibits, and the other evidence as relate to the plaintiff's claim as to the 1930 taxes.

A tax of $6,412.69 for that year was paid in 1931 by installments to the Collector of Internal Revenue. On or about December 8, 1932, the plaintiff filed a claim for refund of the whole of the tax on the ground that it had "failed to deduct (in its return) expenses and losses in foreclosing certain real estate mortgaged in the amount of $69,258.-74." A later claim for refund of $2,010, upon another ground, was allowed and paid, thus reducing the amount of its claim from $6,412.69 to $4,402.69. The claim for refund has been denied sufficiently to warrant this action.

The plaintiff's right to recover depends upon a mortgage debt and what happened with reference thereto. The material facts, as stipulated by the parties, follow: "The real estate involved was located at 366-368 High Street, Holyoke, Massachusetts. This property was acquired in 1921 by the Hadley Falls Realty Company, a wholly owned subsidiary of the plaintiff, for $148,750. On March 3, 1925, the Hadley Falls Realty Company sold this property to the Western Massachusetts Realty Company for $185,-000. During 1927, upon a refinancing, a mortgage note in the principal amount of $65,000 was made by Western Massachusetts Realty Company, secured by a second mortgage on said real estate owned by the Western Massachusetts Realty Company, which second mortgage was subject to a prior mortgage of $100,000 held by the People's Savings Bank of Holyoke, Massachusetts. The said second mortgage and note secured thereby was acquired by the plaintiff in 1927. On November 8, 1930, the directors of the Western Massachusetts Realty Company voted to turn over to the Hadley Falls Trust Company their said property due to the fact that they were unable to meet their mortgage obligations on said property. Thereafter, pursuant to the statute, entry to foreclose said second mortgage for breach of the condition thereof was made on this property on December 1, 1930, which entry was recorded in Hampden County Registry of Deeds, on December 16, 1930. The fair market value of said mortgaged real estate as of December 1, 1930, was the sum of $123,000."

The question is whether the plaintiff, having made an entry for the purpose of foreclosing a mortgage when the mortgaged property was worth $42,000 less than the debt, is entitled to have that sum deducted from its 1930 income.

So far as the 1930 taxes are concerned, no claim is made that clause (a) of section 23 of the Act, 28 U.S.C.A. § 23(a), entitled "Expenses," is applicable. It is contended, however, that clause (f), 26 U.S.C.A. § 23(f), allowing a deduction for "losses sustained during the taxable year," is here applicable. In its brief, the plaintiff states the question with reference to the 1930 taxes as follows: "Whether a loss is sustained as a result of the foreclosure of a second mortgage, under the circumstances disclosed in the record, as of the date of entry to foreclose, where the debt is uncollectible against the mortgagor and the fair market value at the time of the entry is less than the face of the mortgage indebtedness."

As to that portion of the foregoing quotation from the plaintiff's brief reading, "where the debt is uncollectible against the mortgagor," the only finding which I make on the evidence is, as stipulated, that on November 8, 1930, "the directors of the Western Massachusetts Realty Company voted to turn over to the Hadley Falls Trust Company their said property due to the fact that they were unable to meet their mortgage obligations on said property." With this possible exception, the question for determination as to the 1930 taxes is as stated in the plaintiff's brief.

█ The plaintiff did not foreclose its second mortgage within the taxable year. Not having exercised its right under a power of sale, the entry was not tantamount to a foreclosure of the right of redemption.

The Massachusetts statute provides, in substance, that a mortgagee may, after breach of condition of a mortgage of land, recover possession by peaceful entry, and that possession so obtained, if continued peaceably for three years, shall foreclose the right of redemption. Then follows the condition that if an entry is made without a judgment, a memorandum thereof shall be made on the mortgage and signed by the mortgagor or person claiming under him, or a certificate under oath of two competent witnesses to prove the entry must be made. The statute provides for recording such memorandum or certificate. See Massachusetts General Laws, c. 244, §§ 1 and 2.

Article 193 of the Regulations, which relates to a case where mortgaged property is sold or the creditor buys it in, is not applicable to a mere. entry for the purpose of foreclosing a mortgage. It would seem that clause (f) of the statute is intended, not to cover losses due to the fact that a debt is not sufficiently secured, but to cover losses sustained to physical property by fire, theft, or the like. See Spring City Foundry Company v. Commissioner of Internal Revenue, 292 U.S. 182, 54 S.Ct. 644, 78 L.Ed. 1200. However this may be, the plaintiff not having foreclosed the property during the taxable year, but simply having made an entry for the purpose of foreclosing, and not having disposed either of the debt or of the real estate, cannot be regarded as having suffered a loss deductible under clause (f), supra. See Hawkins v. Commissioner of Internal Revenue, 34 B.T.A. 918, affirmed by the Fifth Circuit Court of Appeals, 91 F.2d 354, and cases there cited.

As I understand the plaintiff's position, it does not contend that the claim as to the 1930 taxes can be supported upon the ground that the debt secured by the mortgage was a "bad debt," within the meaning of clause (j), 26 U.S.C.A. § 23 note, supra, and the applicable Regulations. There is nothing to show that the debt secured by the mortgage was either ascertained to be worthless or that it was charged off in whole or in part during the taxable year. See Peerless Oil & Gas Company v. Heiner, 3 Cir., 81 F. 2d 391, certiorari denied 299 U.S. 545, 57 S.Ct. 9, 81 L.Ed. 401; Yocum v. Rothensies, 3 Cir., 87 F.2d 200; Fairless v. Commissioner, 6 Cir., 67 F.2d 475; Continental Pipe Manufacturing Company v. Poe, 9 Cir., 59 F.2d 694.

That portion of clause (j), supra, providing that "when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part," does not help the plaintiff on the facts here presented. The facts show no abuse of discretion on the part of the Commissioner in failing to allow the debt to be charged off in part, and no such claim is made.

The defendant is entitled to judgment so far as the claim for the taxable year 1930 is concerned.

### The 1931 Taxes.

On March 15, 1932, the plaintiff filed its corporate income tax return for the calendar year 1931, showing a tax liability of $17,652.24. This was paid in four installments in the year 1932. The plaintiff, having duly filed a claim for refund and the claim having been denied, seeks to recover approximately $14,583.69 of the taxes paid for the year 1931. The plaintiff's claim depends upon what took place with reference to certain mortgages, with reference to expenses incurred in connection with mortgaged properties which were in the plaintiff's possession during the taxable year, and with reference to certain allegedly bad debts.

### The Mortgages.

The "Stipulation of Facts" says:

"On January 1, 1931, and for some time prior thereto, the plaintiff was the owner and holder of certain first mortgage notes secured by first mortgages on real estate in the aggregate amount of $175,000. (sic) of the principal. The makers of said mortgage notes, the respective dates thereof, the amount of the principal due thereon, and the location of the real estate securing the same are as follows:

| Name of Mortgagor | Date | Amount Due | Location of Real Estate |
|---|---|---|---|
| August O. Normand et al. | April 27, 1921 | $ 5,500.00 | 20 State St. Chicopee |
| Patrick F. Donaghue | June 26, 1929 | 50,000.00 | Corner of Walnut and Hampden Sts. Holyoke |
| Meyer N. Rubin, et al. (Rubin & Cramer) | April 17, 1928 | 75,000.00 | 309–311 High Street Holyoke |
| Fannie Bloomberg (Wm. & Margaret Kelly) | Sept. 27, 1922 | 45,000.00 | 671–677 High Street Holyoke |
| Total | | 175,500.00 | |

"During the year 1931, the makers of said mortgage notes being in default in respect of their note and mortgage obligations, the plaintiff, pursuant to the provisions of said mortgages and statutes, foreclosed said mortgages by exercise of the power of sale in said mortgages contained, or by entry to foreclose for breach of the conditions thereof in each case as follows:

"The August Normand property was foreclosed by entry and sale on August 6, 1931, the property being bid in at a price of $5,000. The Patrick F. Donaghue property was foreclosed by sale and bid in for $51,000 on August 7, 1931, an entry having been made on November 27, 1929. The Rubin property was not foreclosed by a sale but entry to foreclose on this property was made on March 25, 1931. The Bloomberg property was not foreclosed by a sale, but entry to foreclose on this property was made about May 16, 1931. All foreclosure deeds and certificates of entry were duly recorded on the several mortgages referred to herein.

"The fair market value of said real estate at the time of said foreclosures or date of entry to foreclose in each instance is as follows:

| Name of Mortgagor, | Date of Foreclosure | Fair Market Value |
|---|---|---|
| August O. Normand, et al | August 6, 1931 | $ 4,200.00 |
| Patrick F. Donaghue | August 7, 1931 | 45,000.00 |
| | Date of Entry | |
| Myer N. Rubin et al. | March 25, 1931 | 62,500.00 |
| Fannie Bloomberg | May 16, 1931 | 40,000.00 |
| Total | | $151,700.00" |

The Rubin and Bloomberg mortgages involve the same questions considered in connection with the 1930 taxes, and, for the reasons there stated, they avail the plaintiff nothing.

A different question is involved in the Normand and Donaghue mortgages, both of which were foreclosed by sale during the taxable year. The plaintiff urges that it is entitled to a deduction from its income of the sums by which the purchase price at the foreclosure sale or the amount of the mortgage debt exceeded the fair market value of the mortgaged property. In their excellent brief, counsel for the plaintiff urge, as to these mortgages, that the plaintiff is entitled to the deductions claimed by virtue of article 193 of Regulations 74, and they cite also Income Tax Ruling 3121, Prentice-Hall Tax Service, Vol. 1, 1937, p. 596.

Referring to the Commissioner's authority, with the approval of the Secretary, to prescribe all needful rules and regulations for the enforcement of the Revenue Act, the Supreme Court, in Manhattan General Equipment Company v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 400, 80 L.Ed. 528, said: "The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." See, also, Pacific National Bank of Seattle v. Commissioner, 9 Cir., 91 F.2d 103; Clicquot Club Company v. United States, D.C., 13 F.2d 655.

The essence of a transaction whereby a mortgagee buys mortgaged property for the amount of the mortgage debt or for a larger sum is the same as in the case of any purchaser. The loss contemplated by the statute occurs, not when he buys it, but when he sells. The Supreme Court has held that where a mortgagee buys the property at a foreclosure sale for the principal and interest due on the mortgage note, he receives income equivalent to the interest, though the property is worth less than the face of the note. See Helvering v. Midland Mutual Life Insurance Company, 300 U.S. 216, 57 S.Ct. 423, 424, 81 L. Ed. 612, 108 A.L.R. 436. The plaintiff seeks to show that the Helvering Case furnishes no guide to the result in the instant case because "the general provisions of the Revenue Acts concerning 'capital gains and losses' and 'bad debts' are not applicable to life insurance companies." But if a mortgagee who bids in the mortgaged property for the equivalent of the principal and interest due on the mortgage note is the recipient of taxable income, though the property is worth less than the face of the note, I am unable to see how a mortgagee, buying the property at a foreclosure sale, can be deemed for tax purposes to have suffered a loss if the property is worth less than he paid for it.

Under the circumstances, and notwithstanding the Regulations, I conclude that within the meaning of the Revenue Act the plaintiff suffered no deductible loss in the

taxable year 1931 in connection with the foreclosure of the Normand and Donaghue mortgages.

### The Expenses of Carrying Mortgaged Property After Entry to Foreclose And Expenses After Actual Foreclosure.

The facts with reference to this subject depend in part upon the "Stipulation of Facts," and in part upon oral testimony. The agreed facts with reference to this portion of the case follow:

"During 1931, the plaintiff paid out on the properties foreclosed in 1931, * * * the following amounts:

| Normand et al Property | |
|---|---|
| 1930 Real Estate Taxes | $ 235.84 |
| 1931 Real Estate Taxes | 262.68 |
| 1931 Insurance | 21.28 |
| 1931 Legal Expenses | 143.07 |
| | $ 662.87 |

| Patrick F. Donaghue | |
|---|---|
| 1929 Real Estate Taxes | $ 1,221.29 |
| 1930 Real Estate Taxes | 1,106 08 |
| 1931 Real Estate Taxes | 999.72 |
| Insurance Prior to 1931 | 911.53 |
| 1931 Insurance | 734.32 |
| Repairs | 1,757.50 |
| | $ 6,730.44 |

| Myer N. Rubin et al | |
|---|---|
| 1929 Real Estate Taxes | $ 1,956.90 |
| 1931 Insurance | 97.31 |
| Legal Fees | 22.00 |
| | $ 2,076.21 |

| Fannie Bloomberg | |
|---|---|
| 1930 Taxes | $ 1,269.60 |
| 1931 Insurance | 18.75 |
| | $1,288.35 |
| Total Expenses Paid in 1931 | $10,757.87 |

"No deduction was allowed by the Commissioner of Internal Revenue on any of the foregoing amounts.

"The total rents collected by the plaintiff in 1931 from the properties foreclosed in 1931, * * * amounted to the sum of $3,423.76, out of which the Commissioner of Internal Revenue has allowed as a deductible expense the sum of $926.68, leaving a net rent of $2,497.08 which the Commissioner added to the net income of the plaintiff for 1931."

As heretofore appears, the Normand mortgage was actually foreclosed by entry and sale on August 6, 1931, while the plaintiff entered upon the Donaghue property November 27, 1929, and actually foreclosed the mortgage by sale on August 7, 1931. The plaintiff has not sustained the burden of showing that any of the expenses with reference to these properties accrued after the respective actual foreclosures thereof, except in so far as the Commissioner has allowed them.

Is the plaintiff entitled to a deduction for expenses incurred prior to foreclosure and paid during the taxable year by virtue of the statutory provision granting deductions for "ordinary and necessary expenses paid or incurred during the taxable year"? The answer to this question, I think, depends on the status under Massachusetts law of a mortgagee in possession of mortgaged realty for the purpose of foreclosure.

■ Massachusetts General Laws, c. 244, § 1, provides: "A mortgagee may, after breach of condition of a mortgage of land, recover possession of the land mortgaged by an open and peaceable entry thereon, if not opposed by the mortgagor or other person claiming it, or by action under this chapter; and possession so obtained, if continued peaceably for three years, shall forever foreclose the right of redemption."

This method of foreclosure is very old in Massachusetts, apparently dating back, in its essentials, to before the Revolution, and is virtually the only way to foreclose a mortgage containing no power of sale. The bill in equity to foreclose now lies only in exceptional cases where there is no adequate remedy at law. Where an entry is made under this section, which is continued for the three-year period, so that the equity of redemption is barred, there is a payment pro tanto on the debt to the extent of the value of the land at the time the foreclosure becomes complete. "A foreclosure of the mortgage, completed, is payment of the mortgage debt, in contemplation of law, to the extent of the value of the land at that time." Morse v. Merritt, 110 Mass. 458. See, also, West v. Chamberlin, 8 Pick., Mass., 336.

■ General Laws, c. 244, § 20, provides: "*Accounting.* If the mortgagee or person claiming or holding under him has had possession of the land, he shall account for rents and profits, and be allowed for all amounts expended in reasonable repairs and improvements, for all lawful taxes and assessments paid and for all other necessary expenses in the care and management of the land. A balance of such account, if due from him, shall be deducted

from the debt due on the mortgage; if due to him, shall be added to the debt, and paid or tendered as such."

Though this section of the statute appears under the general heading "Redemption," I think it either establishes or is declaratory of the Massachusetts law applicable alike to a bill for redemption and an action for a deficiency judgment. See City Institution for Savings v. Kelil, 262 Mass. 302, 159 N.E. 731, 733. In that case, as in the case of the Normand and Donaghue mortgages, the mortgagee, after entry, concluded to foreclose by exercise of a power of sale, and the court said: "While the mortgage deed is not included in the record, the validity of the foreclosure sale is unchallenged, and the last contention of the defendant is that although he does not question the amount of the sums paid by the plaintiff for taxes, and interest thereon, and for water assessments, and for plumbing, and the premiums for insurance, and the commission of the auctioneer, and for the services of counsel and legal services in the foreclosure proceedings, these charges were improperly allowed by the court, and that he is entitled to be credited with the full amount received at the sale. It is provided by G.L. c. 244, § 20, that if a mortgagee, as in the case at bar, 'has had possession of the land [then follows the remainder of section 20, as quoted above]. The defendant makes no assertion that the mortgage did not contain a power of sale, and by G.L. c. 183, § 27, a mortgagee foreclosing thereunder 'shall be entitled to retain all sums then secured by the mortgage, whether then or thereafter payable, including all costs, charges or expenses incurred or sustained by him * * * by reason of any default in the performance or observance of the condition of the mortgage * * * rendering the surplus, if any, to the mortgagor, or his heirs * * * unless otherwise stated in the mortgage.' The plaintiff therefore could deduct accrued interest, and the expenses of foreclosure, including the auctioneer's commission, and charges for legal services."

█ Since, as to all four mortgages, the plaintiff's right to a deficiency judgment depends on the value of the mortgaged property at the end of the three-year period, and any losses incurred by the mortgagee in possession are to be added to the debt, losses and expenses incurred during the three-year foreclosure period are not deductible from the taxpayer's 1931 income.

## The Unsecured Notes.

█ The "Stipulation of Facts" provides that:

"The plaintiff was the owner and holder of six certain promissory unsecured notes made by the Western Massachusetts Realty Company in the aggregate amount of $40,908.74 set out and described as follows:

| | |
|---|---:|
| "Note due January 29, 1932 (sic) [1] | $ 7,990.00 |
| Note due March 2, 1932 | 7,990.00 |
| Note due April 4, 1932 | 9,490.00 |
| Note due April 15, 1932 | 5,990.00 |
| Note due July 1, 1931 | 5,536.20 |
| Note due July 15, 1930 | 3,912.54 |
| Total | $40,908.74" |

There was considerable testimony with reference to a reserve for bad debts set up on the plaintiff's books in the year 1931, as to which I find that the reserves amounting in the aggregate to $40,000 were set up, not particularly against these notes, but against any of the plaintiff's assets which might turn out to be of less value than that at which they were carried on the books.

In its brief the plaintiff says that the question on this branch of the case is "Whether the plaintiff ascertained as worthless and charged off in 1931 as a bad debt certain uncollectible promissory notes of the face value of $40,908.74."

The plaintiff did not charge off as worthless in whole or in part any of these obligations during the taxable year. The charge-off took place in February, 1932, and was the result of no mistake. The plaintiff's treasurer testified with perfect frankness to this effect, and I find that the reason no loss was claimed in the plaintiff's tax return for 1931 (filed in 1932) was as indicated by the following questions and answers:

"The Court. * * * The question, Mr. Drapeau, is, Why, when you were including deductions for bad debts in the return for the year 1931 you didn't include these $40,000 of notes?

"The Witness. In all the years I made the returns I never claimed any deductions in my returns unless the items had been actually charged off.

"The Court. You didn't do it because the item of $40,000 hadn't been actually charged off?

---

[1] An examination of the note dated January 29 indicates that by its terms it became due April 29, 1932.

"The Witness. That is right.

"The Court. And if you had understood from your conversations with the officers that that had been charged off, or from inspection of the books that that had been charged off, you would have claimed a deduction of the amount of those notes as bad debts in your return prepared for the year 1931?

"The Witness. That is right.

"Q. You didn't consider those bad debts to which you referred in your testimony as having been charged off prior to the date you filed your 1931 return in 1932, did you? A. I never claimed any deductions on my returns unless the items had actually gone through the books.

"Q. At the time you filed the 1931 return, in March 1932 you did not consider those bad debts as having been charged off the company's books, did you? A. No, sir."

Bearing further upon the question as to whether these notes were charged off in the year 1931, it may be added that some of them were superceded by a $9,500 note dated January 4, 1932, an $8,000 note dated January 29, 1932, and $8,000 note dated December 2, 1931, and a $6,000 note dated January 15, 1932.

I find as a fact upon all the evidence that the six notes of Western Massachusetts Realty Company were not "debts ascertained to be worthless and charged off within the taxable year." As stated in Fairlees v. Commissioner, 6 Cir., 67 F.2d 475, 478, "It was clearly the purpose of The Congress to condition allowance of deduction for bad debts upon the perpetuation of evidence that they were ascertained to be worthless within the taxable year, and upon some specific act of the taxpayer clearly indicating their abandonment as assets." See Peerless Oil & Gas Company v. Heiner, 3 Cir., 81 F.2d 391; Yocum v. Rothensies, 3 Cir., 87 F.2d 200; Continental Pipe Manufacturing Company v. Poe, 9 Cir., 59 F.2d 694; Stifel v. Commissioner, 7 B.T.A. 1060.

The plaintiff is entitled to no deduction in connection with these notes.

There remains for consideration another matter as to which the evidence is in a rather unsatisfactory state. As heretofore found in another connection, "the total rents collected by the plaintiff in 1931 from the properties foreclosed in 1931, * * * amounted to the sum of $3,423.76, out of which the Commissioner of Internal Revenue has allowed as a deductible expense the sum of $926.68, leaving a net rent of $2,497.08, which the Commissioner added to the net income of the plaintiff for 1931." If all of this income had been received after the actual foreclosure by sale of the mortgaged property, this would have been correct. But to the extent that the income was received while the plaintiff was in possession of the mortgaged properties and before actual foreclosure, it is incorrect. If, as I have held, a mortgagee in possession is not entitled to a deduction for expenses which go to increase the mortgage debt, he is not taxable for rents received which go to a reduction of the debt.

The parties should, I think, attempt to agree as to what portion of the gross income received from the mortgaged properties in the year 1931 is applicable to the period when, prior to actual foreclosure, the plaintiff was in possession. They may then agree upon the effect of such a suggested deduction from the 1931 income upon the proper amount of the tax which the plaintiff is entitled to recover. In the absence of such an agreement, I propose to give the plaintiff an opportunity to offer evidence upon this subject.

The plaintiff's motion for judgment is denied, except as to the matter last discussed, and to such denial the plaintiff's exception is saved.

The defendant's motion for judgment must be denied because of the matter last discussed, and to such denial the defendant's exception is saved.