HAIRENIK ASSOCIATION, INC. *vs.* CITY OF BOSTON.

Suffolk.    October 8, 1942. — February 24, 1943.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & COX, JJ.

*Taxation,* Of real estate: exemption. *Charity. Corporation,* Charitable.

Real estate owned and occupied by a corporation organized for charitable purposes was not exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third, where the "dominant purpose" of its occupancy was the commercial publication of a newspaper and job printing and the job printing, at least, had no relation to its charitable purposes, even though profits derived from such businesses were applied solely to such purposes.

CONTRACT. Writ in the Superior Court dated April 1, 1940.

The action was heard by *Beaudreau,* J.

*P. Nichols,* (*B. Morton* with him,) for the plaintiff.

*H. Freed,* Assistant Corporation Counsel, (*E. K. Nash,* Assistant Corporation Counsel, with him,) for the defendant.

DOLAN, J. This is an action of contract to recover taxes assessed for the year 1938 on certain real estate

owned by the plaintiff. See G. L. (Ter. Ed.) c. 60, § 98. The taxes were paid by the plaintiff under protest on the ground that the property was exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Third. The judge before whom the case was tried without a jury found for the defendant.

There was evidence tending to show the following facts, most of which were expressly found by the judge: On April 14, 1915, a business corporation was formed under the name of Hairenik Publishing Company, by some of the plaintiff's incorporators, for the purpose of publishing a newspaper in the Armenian language, for the enlightenment and cultivation of the Armenian public in national, political, social and moral problems and matters, and for the publication of books and pamphlets. This company published the newspaper called Hairenik and functioned, in general, in accordance with the purposes above described. It occupied the real estate here involved and printed and published the newspaper, until the corporation was dissolved in March, 1921. In 1922 and 1923 the real estate was assessed to Krikor Garabedian and Jasper Rustigian "doing business as the Hairenik Publishing Company." They published the paper after the dissolution of the publishing company until the plaintiff corporation was formed in 1923.

On July 12, 1923, Garabedian and Rustigian with others formed the plaintiff corporation for the following purposes: "1. To help, aid and assist the widows and orphans of Armenians who have died fighting for the independence of Armenia. 2. To assist the helpless or disabled veterans who have fought and worked for the Armenian cause. 3. In furtherance but not in limitation of the foregoing purposes, to engage in a general printing and publishing business, the net income to be devoted to the general purposes of the association." Soon after its incorporation the plaintiff acquired title to the real estate in question and has since maintained the building as its headquarters. Printing presses, linotype machines and offices of the plaintiff are located in the basement and first floor of the building. On the second floor there is a hall with library facilities,

which was used for social purposes for the Armenian people of Boston. No charge was made for the use of the hall. The plaintiff continued to print and publish the newspaper Hairenik on the premises. It is patterned after "our own American dailies," and solicits and publishes advertisements which are paid for. It has a large circulation. In addition, the plaintiff publishes a "weekly" newspaper of the same name in the English language, which also has a large circulation and sells for five cents a copy. It also publishes a monthly magazine in the Armenian language, which it distributes without charge to those of the members who have paid their dues, and it also does job printing. It has a large membership in the United States and the dues are $12 per year. The receipts from dues in the plaintiff's fiscal year ending in May, 1938, amounted to $22,431, which included "back dues." The receipts from dues were segregated on the plaintiff's books, as were the receipts from the publishing business. In 1938 the plaintiff expended $13,102.70 for the relief of Armenian veterans in foreign lands, and $18,-014.71 for like relief to Armenian veterans in the United States. Some donations were made by it for local public charitable purposes. The publishing account of the plaintiff, as before stated, was kept separately. Its gross income from subscriptions and advertising was $40,711.69 in the year ending May 31, 1938. In that year $8,606.04 was also received by the plaintiff from the operation of "shop printing" business or, as found by the judge, for "job printing," making the gross income from the publishing and printing business $48,879.50. In the period just mentioned a net profit of $1,579.72 was shown. In some years a profit was made and in others a loss was sustained in the business. Deficits were made up out of the receipts of dues from the members. None of the income of the plaintiff from any source has ever been divided among its members. There was evidence that the purposes of the various publications were to hold the Armenians in the United States as a group "so that they can be reached for an appeal for funds."

At the close of the evidence the plaintiff presented nine

requests for rulings, of which two were granted. Seven were denied and the plaintiff excepted to their denial. The requests of the defendant (ten) were all granted, subject to the plaintiff's exceptions. Among the requests of the defendant were requests to the effect that on all the evidence the plaintiff was not entitled to recover, and that it is not a benevolent or charitable institution within the meaning of G. L. (Ter. Ed.) c. 59, § 5, Third, and cannot recover in this action. In argument before us the plaintiff relies largely upon its exception to the action of the judge in denying its fifth request for a ruling, which was as follows: "If the dominant purpose of the plaintiff in publishing a newspaper and other periodicals was to foster and retain the interest of Armenians in America in the charitable activities of the plaintiff and to keep the readers of these periodicals disposed to support the plaintiff in helping the beneficiaries of its charities, and the publication though occasionally returning an annual profit was conducted through the years at a loss, the fact that the plaintiff was to this extent engaged in publishing periodicals on its real estate in Boston would not render such real estate taxable." In this connection the plaintiff argues that the real point at issue is whether the fact that charges were made for the periodicals published renders the land and building of the plaintiff taxable "if the dominant purpose of publishing . . . [them] was to maintain interest in the charitable work of the institution."

In passing upon the requests for rulings the judge made the following statement: "Notwithstanding the fact that a substantial amount of money received by this corporation finds it[s] way to charitable objects, both foreign and domestic, nevertheless I find that on all this evidence the dominant purpose of the use, occupancy and ownership of this building was for the publication and printing of a newspaper and job printing, and this is so even though none of the profits or income was divided among its members and that in some years this business showed a loss and in others a profit."

There was no error in the denial of the plaintiff's fifth

request for a ruling. It was predicated upon fragments of the evidence and upon the assumption of facts contrary to those found by the judge, and omits the very important fact disclosed by the evidence that a job printing business for pay which had no relation to the plaintiff's charitable purposes was conducted by the plaintiff on the premises in question. In this connection it is pertinent to observe that the plaintiff has addressed no argument to us with relation to the denial of its eighth request, that "If the plaintiff occasionally but to a trifling extent did job printing on its premises for Armenians for purposes not mentioned in its charter, but its printing operations were as a whole conducted at a loss, such use would not render its real estate taxable," and has not discussed the effect of conducting a job printing business by the plaintiff on the premises with relation to taxation.

There was no error in granting the defendant's request for a ruling that on all the evidence the plaintiff is not entitled to recover. It has long been settled that "An action of contract . . . to recover a tax under G. L. c. 60, § 98, cannot be maintained unless the tax is wholly void," and that the exclusive remedy for overassessment of real or personal property is the statutory proceeding for abatement. *Central National Bank* v. *Lynn*, 259 Mass. 1, 6, 7. *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 246. Admittedly the first two purposes set forth in the plaintiff's charter are charitable purposes. The judge so ruled at the request of the plaintiff, and the defendant so concedes. We are not called upon to decide whether the third purpose recited in the plaintiff's charter, that is, to engage in a general printing and publishing business in furtherance, and not in limitation, of its two charitable purposes, in all circumstances would of itself exclude the plaintiff from the exempted class as to the real estate here involved. See *McKay* v. *Morgan Memorial Co-operative Industries & Stores, Inc.* 272 Mass. 121, 124, and cases cited.

The principles governing the present case are stated in *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, with a review and citation of authorities.

In that case the court said the "answer to the question 'whether the institution is in its character literary, benevolent, charitable or scientific within the meaning of those words in the statutes' 'will depend upon the language of its charter or articles of association, constitution and by-laws, and upon the objects which it serves and the method of its administration' . . . that is, 'upon its purposes declared and the work done.'" Page 384. See *Assessors of Boston* v. *Boston Pilots' Relief Society*, 311 Mass. 232. In the latter case the purposes declared were charitable, but the by-laws and methods of administration were held to be such as to exclude the society from the exempted class. So in the instant case we must look to the declared purposes of the plaintiff and the work done, and also to the character of the occupancy of the real estate in question.

The exemption provided for in the statute is of real estate occupied by charitable and certain other institutions for the purposes for which they were incorporated, that is, for the literary, benevolent, charitable or scientific purposes for which they were incorporated. It is settled that the "occupation of real estate by an institution which entitles it to exemption of such real estate is occupation directly for the charitable purposes for which it is incorporated and not occupation for profit even if such profit is used for such charitable purposes." *Assessors of Boston* v. *Garland School of Home Making*, 296 Mass. 378, 391, and cases cited. The "distinction is between activities primarily commercial in character carried on to obtain revenue to be used for charitable purposes . . . and activities carried on to accomplish directly the charitable purposes of the corporation, incidentally yielding revenue." *McKay* v. *Morgan Memorial Co-operative Industries & Stores, Inc.* 272 Mass. 121, 124, and cases cited. In the instant case, even if the assumption be made that the plaintiff could administer all the purposes for which it was created in such a way as to bring it within the exempted class, it seems clear that its occupation of the premises was in large part for purposes commercial in character, and as to the job printing, at least, having no relation to its charitable

purposes, and that therefore, even though any profit was devoted solely to its charitable purposes, the plaintiff cannot prevail. See *Chapel of the Good Shepherd* v. *Boston,* 120 Mass. 212, 213, 214.

What we have said above disposes of all the exceptions argued by the plaintiff.

*Exceptions overruled.*