BOSTON FIVE CENTS SAVINGS BANK *vs.* CITY OF BOSTON.

Suffolk.   December 5, 1944. — May 7, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Taxation,* Real estate tax: withholding of amount of tax, certification, personal obligation of person assessed, lien.

The certification of a real estate tax by the collector of taxes to the city treasurer for addition to an outstanding tax title account pursuant to G. L. (Ter. Ed.) c. 60, § 61, as amended, and the crediting of the collector for the amount of the tax under § 95, as amended, did not prevent the treasurer from subsequently withholding the amount of the tax from money owed to the taxpayer by the city and paying the amount so withheld to the collector pursuant to § 93 as it stood before the 1943 amendment.

The primary liability to pay a real estate tax is upon the person assessed; the lien upon the land is merely security for its payment.

CONTRACT OR TORT. Writ in the Superior Court dated July 20, 1943.

The action was heard by *Greenhalge, J.*

*J. F. Sullivan,* for the plaintiff.

*J. W. Kelleher,* Assistant Corporation Counsel, (*W. H. Kerr,* with him,) for the defendant.

WILKINS, J. This is an action of contract or tort for reimbursement to the amount of an abatement on a real estate tax which had been paid by the plaintiff bank. The defendant city refused to pay the abatement in full, asserting a right to withhold the amount of unpaid taxes on another parcel of real estate. See G. L. (Ter. Ed.) c. 59, § 69, as amended by St. 1939, c. 366, § 3; G. L. (Ter. Ed.)

c. 60, § 98. The case was heard upon a case stated by a judge, who "found" for the bank in the lesser amount admittedly due. This was in effect an order for judgment. *Edinburg* v. *Allen-Squire Co.* 299 Mass. 206, 207. See *F. & M. Skirt Co. Inc.* v. *Rhode Island Ins. Co.* 316 Mass. 314, 315. The bank appealed. G. L. (Ter. Ed.) c. 231, § 96.

As of January 1, 1939, the assessors assessed to the bank, as owner of real estate at 24–30 School Street, Boston, a tax of $61,845, and on September 1, 1939, committed the tax with their warrant to the collector of taxes. On September 25, 1939, the bank paid the tax in full, but instituted abatement proceedings, during the pendency of which the bank and the assessors agreed that there had been an overvaluation of $375,000. On February 20, 1942, the assessors issued to the bank a certificate of abatement in the amount of $14,962.50. G. L. (Ter. Ed.) c. 59, § 70.

On January 1, 1939, and on January 1, 1940, the bank was also the owner of real estate at 347–351 Congress Street and 332–336 A Street, Boston, apparently having acquired title by foreclosure of a mortgage. As of January 1, 1939, the assessors assessed to the bank a tax of $6,583.50 upon the said real estate, and on September 1, 1939, committed the tax with their warrant to the collector. As of January 1, 1940, a similar tax of $7,183.44 was assessed, and on September 5, 1940, was committed to the collector with the warrant of the assessors. The collector demanded of the bank payment of the 1939 tax on January 9, 1940, and of the 1940 tax on January 3, 1941. On July 20, 1940, and on May 3, 1941, respectively, the collector certified to the treasurer the 1939 tax and the 1940 tax for addition to a tax title account set up on the books of the city in the possession of the treasurer. G. L. (Ter. Ed.) c. 60, § 50, as amended. In each instance the treasurer gave the collector a certificate stating that the amount of such tax had been added to the tax title account and the collector credited as if the tax had been paid in money. G. L. (Ter. Ed.) c. 60, § 61, as last amended by St. 1936, c. 93, § 1. On March 13, 1940, the collector had taken for the city the real estate at Congress and A streets for nonpayment of a

1935 tax assessed to the heirs or devisees of one Redding as owners,[1] and on the same day set up the said tax title account. G. L. (Ter. Ed.) c. 60, § 50, as amended. The tax title has never been foreclosed nor redeemed, and no sum has ever been paid or tendered on account of redemption. During 1941 the bank ceased to be the owner of this property.

On July 20, 1943, the bank demanded of the treasurer the sum of $16,409.07, which was the amount of the abatement on the School Street property with interest from the date of payment of the tax to the date of abatement. Simultaneously with the demand the collector requested the treasurer in writing "to withhold, pursuant to General Laws, chapter 41, section 38A, and chapter 60, section 93, the sum of $14,797.79 from any money payable to Boston Five Cents Savings Bank, from whom taxes or other charges or accounts in that sum are now due the city of Boston." The treasurer thereupon withheld from the $16,409.07 payable to the bank, and paid to the collector, the sum of $14,797.79, which the collector forthwith paid back to the treasurer with detailed information as to the items it satisfied. The treasurer then applied the $14,797.79 to the payment of the 1939 and 1940 taxes, including interest and costs, on the property at Congress and A streets. The treasurer tendered to the bank the sum of $1,611.28, together with a receipt showing the application of the $14,797.79, which the bank refused to accept. The order for judgment for the bank was in the amount of $1,611.28 without interest.

The question for decision is whether on July 20, 1943, the treasurer was entitled to withhold the amount of the taxes on the real estate at Congress and A streets notwithstanding that such taxes had been certified for addition to a tax title account under G. L. (Ter. Ed.) c. 60, § 61, as amended, and the collector had been credited "as if the tax had been paid in money" under § 95, as amended. Taxes are not the subject of set-off except by statute. *Peirce* v.

[1] G. L. (Ter. Ed.) c. 59, § 16. See now St. 1937, c. 114. *Franklin* v. *Metcalfe*, 307 Mass. 386, 388.

*Boston,* 3 Met. 520. *Nichols* v. *Commissioner of Corpora-
tions & Taxation,* 314 Mass. 285, 305. Authority for the
treasurer's action, therefore, must be found in G. L. (Ter.
Ed.) c. 60, § 93, as it stood on July 20, 1943, prior to the
effective date of its amendment by St. 1943, c. 199. Sec-
tion 93 before amendment read as follows: "The treasurer
or other disbursing officer of any town may, and if so re-
quested by the collector, shall, withhold payment of any
money payable to any person whose taxes are then due and
wholly or partly unpaid to an amount not exceeding the
unpaid tax with interest and costs. The sum withheld shall
be paid or credited to the collector, who shall, if required,
give a written receipt therefor. The person taxed may in
such case have the same remedy as if he had paid such tax
after a levy upon his goods. The collector's rights under
this section shall not be affected by any assignment or
trustee process." This language is broad in scope. It au-
thorizes the treasurer to "withhold payment of any money
payable to any person" whose taxes are unpaid in whole
or in part. It empowers the treasurer to withhold volun-
tarily, and makes such action mandatory on him if the
collector so requests. The only limitation is that the
amount withheld shall not exceed the unpaid tax with in-
terest and costs. By St. 1943, c. 199, the first sentence of
§ 93 was amended so as to read, "The treasurer or other
disbursing officer of any town may, and if so requested by
the collector shall, withhold payment of any money payable
to any person from whom there are then due taxes, assess-
ments, rates or other charges committed to such collector,
which are wholly or partly unpaid, whether or not secured
by a tax title held by the town, to an amount not exceed-
ing the total of the unpaid taxes, assessments, rates and
other charges, with interest and costs." We are of opinion
that the inclusion of the words, "whether or not secured
by a tax title held by the town," is declaratory of the effect
of this section as it stood before the amendment.

Clearly the withholding in question was authorized by
§ 93 unless it was expressly or impliedly prohibited by
some other provision of law. There is no express prohibi-

tory provision, but the bank contends that the right to withhold had been lost by implication because the collector was credited under § 95 after he certified such taxes to the treasurer, who had added them to a tax title account and included them in the terms of redemption from a tax title taken by the city for nonpayment of 1935 taxes. See G. L. (Ter. Ed.) c. 60, § 61, as amended, which in part reads, "Whenever a town shall have purchased or taken real estate for payment of taxes the lien of the town on such real estate for all taxes assessed subsequently to the assessment for payment of which the estate was purchased or taken shall continue, and it shall be unnecessary for the town to take or sell said real estate for nonpayment of said subsequent taxes, costs and interest; and on redemption from such taking or purchase, said subsequent taxes, costs and interest shall be paid to the town, and the payment shall be made a part of the terms of redemption, except that if any of the said subsequent taxes have not been certified by the collector to the treasurer to be added to the tax title account, then redemption may be made by payment only of the amount of the tax for which the estate was purchased or taken and of such subsequent taxes as shall have been so certified, together with costs and interest. The collector shall certify to the treasurer not later than September first of the year following that of their assessment all subsequent taxes which become part of the terms of redemption and the treasurer shall give him a certificate stating that the amount or amounts have been added to the tax title account or accounts and the collector shall be credited as if the tax had been paid in money." This has the effect of making certification a prerequisite to the collection or redemption of a subsequent tax, while the date of actual certification is merely directory and is "to fix a time when the responsibility of the collector ends and that of the treasurer begins." *Boston* v. *Barry*, 315 Mass. 572, 575, 577. See *Chelsea* v. *Richard T. Green Co.*, *ante*, 85. Furthermore, under § 61, "a sale for nonpayment of such subsequent taxes cannot be made, but satisfaction of such taxes must be obtained on redemption or else by enforc-

ing a personal liability." *Boston* v. *Barry, supra,* at page 576. The 1939 and 1940 taxes were the personal liability of the bank. *Richardson* v. *Boston,* 148 Mass. 508, 509–510. *Saftel* v. *Brooks,* 254 Mass. 516, 518. Although under G. L. (Ter. Ed.) c. 60, § 37, as amended, there is a lien upon the land for the assessed tax, the primary liability to pay is upon the person assessed: *Dunham* v. *Lowell,* 200 Mass. 468, 469. *Massachusetts Hospital Life Ins. Co.* v. *Shulman,* 299 Mass. 312, 314. *Morison* v. *Assessors of Brookline,* 313 Mass. 746, 748. The lien is simply security for the payment of the tax. *Webber Lumber Co.* v. *Shaw,* 189 Mass. 366. "The remedies which the statutes provide for the collection of a tax are cumulative." *Boston* v. *Turner,* 201 Mass. 190, 197. It is the duty of the collector to enforce payment of all taxes committed to him. G. L. (Ter. Ed.) c. 60, § 2. If a tax remains unpaid for three months after commitment, he, and he alone, may maintain an action. § 35, as amended. *Burr* v. *Boston,* 208 Mass. 537, 541. If a tax upon real estate remains unpaid fourteen days after demand, the collector within one year from October 1 in the year of assessment "shall collect the tax . . . in the manner provided by law." § 17. If a tax is assessed upon the estate of a deceased person, the executor or administrator after demand and the receipt of money applicable to its payment becomes personally liable. § 36. The collector must give bond for the faithful performance of his duties. § 13, as amended. He is to be credited with certain sums, including sums withheld by the treasurer under § 93, the amount of taxes on land purchased or taken by the city for nonpayment of taxes, and, upon certification under § 61, the amount of subsequent taxes which have become part of the terms of redemption from any tax title held by the city. § 95. The bank states in its brief that it does not contend that the collector after certification of the 1939 and 1940 taxes could not enforce the personal liability of the bank, or that he made an election between the remedies afforded by § 35 and § 36 on the one hand, and by § 61 on the other, but rather it argues that by obtaining credit under § 95 for taxes certified under § 61

"he abandoned his right to be credited" under § 95 for taxes withheld under § 93.   Stated in another way, the contention is that the city as an involuntary landowner was deprived of the right to obtain payment of the tax obligation in cash, and pending disposition of the property was remitted to an unliquid asset in place of the ready money required for the maintenance of the functions of government.   This would have as an incidental effect that, even if the property could be sold for a sufficient amount after foreclosure of the right of redemption, two years must elapse after the tax taking or sale before anything might be received through such a sale on account of the taxes certified.   G. L. (Ter. Ed.) c. 60, § 45, as amended, § 65, as amended, § 79, as amended.   We should reach such a result only with extreme reluctance and only by reason of inescapable statutory provisions which are not to be found. We think that the provisions for a credit to the collector under both § 93 and § 95 for taxes withheld and under § 95 for taxes certified are mere matters of internal municipal regulation not affecting the rights of the city against a taxpayer in default.   Although not of concern to the bank, there need be no problem of double credit, as the legislative intention must have been to provide for a credit to the collector only where such credit had not previously been given to him.   We do not accept the bank's contention that after certification under § 61 and credit under § 95 the 1939 and 1940 taxes were the exclusive concern of the treasurer to the full extent of "dealing with the taxpayer under all circumstances," and that the sole function of the collector was to "certify to the treasurer all taxes of years subsequent to that for which the property was sold."   Examples of other duties of the collector after certification are the giving of notice of a tax lien on property taken by eminent domain, G. L. (Ter. Ed.) c. 79, § 44A, as amended; making written demand on the owner of record to protect by insurance or otherwise the city's interest in real estate held under a purchase or taking for nonpayment of taxes, G. L. (Ter. Ed.) c. 60, § 50A, as inserted by St. 1934, c. 154, § 2; and making disclaimer if he has

reasonable cause to believe a tax title is invalid by reason of error in the assessment, sale, or taking, G. L. (Ter. Ed.) c. 60, § 84, as amended.

There is nothing in the bank's suggestion that the tax after certification and credit ceased to be "committed" to the collector within the meaning of that term as used in § 93. Furthermore, this phrase appears only in the amendment of § 93 by St. 1943, c. 199, which does not apply to the case at bar.

The bank raises a question about the form of receipt tendered to it by the treasurer. Section 93 provides that the collector "shall, if required, give a written receipt" for the sum withheld. As the bank denied the city's right to withhold, no such receipt thus far has been "required." It is still open to the bank to obtain a proper receipt.

*Order for judgment affirmed.*