TOWN OF NORWOOD *vs.* NORWOOD CIVIC ASSOCIATION.

Norfolk.   February 1, 9, 1960. — March 10, 1960.

Present: WILKINS, C.J., WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Taxation*, Real estate tax: exemption; Void tax. *Charity. Corporation*, Charitable corporation. *Land Court*, Appeal, Record, Foreclosure of tax title.

Upon an appeal to this court under G. L. c. 231, §§ 96, 142, from a decision by the Land Court in a proceeding to foreclose a tax title on land, a transcript of the testimony is not a part of the record. [521–522]

If a taxpayer owns no taxable real estate in a town and therefore has a remedy under G. L. c. 60, § 98, to recover a void tax assessed upon his exempt real estate in the town, he may assert essentially the same remedy as a defence in a proceeding by the town under c. 60, § 65, to foreclose a tax title on such exempt land. [523–524]

A conclusion by a judge of the Land Court, not purporting to rest on his specific findings but "upon all the evidence," some but not all of which was set forth in his decision, that real estate in a town owned by an incorporated civic association on which recreational activities were conducted was not exempt from taxation under G. L. c. 59, § 5, Third, could not be said by this court on the record to be erroneous. [524]

PETITION, filed in the Land Court on January 6, 1941.

The case was heard by *Fenton*, J.

*Charles Higginson*, for the respondent.

*Walter J. Gotovich*, Town Counsel, for the petitioner.

CUTTER, J.   This is an appeal by the Norwood Civic Association (the association) from a decision of the Land Court upon the town's petition, filed in 1941, to foreclose a tax title to a parcel of land (the locus) with its buildings on Brook Street, Norwood. This tax title was taken by the town in 1937 and covered a parcel of twelve acres plus 22,040 square feet. In 1957, the association filed an amended

answer asserting (in addition to other circumstances no longer in issue) that the tax was void because the real estate of the association "was and is exempt from taxation" under G. L. c. 59, § 5, Third.

The trial judge found the following facts. The locus was conveyed to the association on March 30, 1934, by Norwood Estates Inc. of which George F. Willett was president. The function of Norwood Estates Inc. "was to take over properties . . . essential to and used in connection with Willett property." The locus was part of a twenty-five acre tract of pond beach property, partly in Walpole, partly in Westwood, and partly in Norwood. Real estate taxes were paid on the Westwood land. The locus is adjacent to vacant land of Westover Estates Inc., a corporation controlled by Willett. Willett also had some connection with other organizations, Westover Corporation, Norwood Housing Trust, and Housing Security, used by him in the past in connection with land or housing projects in which he was interested.

The association was a corporation organized in 1914, under a predecessor of G. L. c. 180, to promote "the welfare of the town of Norwood . . . and to improve the morality, industry, thrift, health, cleanliness, education and good citizenship of its inhabitants." The association held various parcels of taxable land (although at what period is not clear from the decision) and for some years operated a civic center in Norwood. The civic center burned in 1930 and the association received from fire insurance and the sale of certain land $183,000 in the aggregate, some of which "went to pay obligations of the Housing Security or Westover Corporation, which were controlled by . . . Willett."

In 1934, when the association took title to the locus, Norwood Estates Inc. "was in tax difficulties." Willett testified "that the only reason . . . [the] [a]ssociation would have taken title . . . was as a part of the plan to relieve Norwood Estates Inc. of its tax burden and its tax difficulties."

The locus was assessed to the association in 1934 and in 1935 and in those years "it was carried on the tax-exempt list." It was "first taxed to the . . . [a]ssociation in 1936."

On September 30, 1936, the association filed an application under G. L. c. 59, § 59, for recognition in that year of the statutory exemption under G. L. c. 59, § 5, Third. See *Assessors of Boston* v. *Suffolk Law Sch.* 295 Mass. 489, 498. In this application the answer "No" was given to the question "Does the corporation occupy the real estate upon which exemption is claimed?" The assessors refused to abate the tax and the association appealed to the Appellate Tax Board. On December 14, 1938, the appeal petition was withdrawn. The association has not paid the real estate taxes assessed for 1936 or for any subsequent year and these taxes have not been abated. The record reveals no applications under c. 59, § 59, after 1936 for abatement of taxes or for recognition of the statutory exemption.

The trial judge, without making findings, recited "testimony that the Red Cross ran the bathhouse, the instructional and swimming programs and the beach during the year 1936 and other years" and that "even though the Red Cross may have supervised the programs . . . and paid rental for the bathhouse, the . . . [a]ssociation exercised some control over the beach." The judge found, but did not relate these findings to particular years, that there "was no direct charge in the operation of the bathhouse erected on the property to those who used it, nor any charge for dressing or undressing in the bathhouse. Children under fifteen . . . from Norwood were admitted to the pond premises free." There were charges for children from elsewhere as well as for adults and for automobiles which entered the pond premises. Charges were made for refreshments. Financial records of the association for 1955 and 1956 showed expenditures for services of the beach manager, lifeguards, and refreshment stand attendants, and for maintenance, supplies, insurance, and "other expenses whether connected with the operation of the beach or not." There was a profit in 1955 of $3,099.06 and also a profit in 1956, but apparently a loss in 1957 and 1958. The association had assets in 1955 of $222,690.89 and in 1956 of $168,092.82. These "assets consisted principally of vacant non-income producing land." No financial records

of the association for years other than 1955 and 1956 were in evidence.

The judge concluded "upon all the evidence that . . . [the] real estate is not exempt from taxation." In reaching this conclusion, he seems to have placed weight (a) upon the corporation's answer "No" to the question on the 1936 application about its occupancy of the taxed land, (b) upon the domination of the association by Willett ("whose principal purpose was to . . . sell houses on some 2,000 acres . . . owned by a business corporation, Westover Estates Inc.") as "one of several corporations controlled and dominated by" him; (c) upon the existence of evidence, not reported, "that some of the income . . . of the . . . [a]ssociation was used . . . for . . . purposes other than that of the corporation itself"; and (d) upon Willett's testimony that the reason for the association's acquisition of title was "to relieve Westover Estates Inc. of its tax burden and tax difficulties."

The trial judge concluded that the tax title was valid and that the association may redeem upon the payment of $13,453.79, the aggregate amount of the tax title account (which did not include 1958 taxes) with interest to October 27, 1958, plus interest from that date and costs.

1. A motion was presented in this court to require the Land Court to transmit the transcript of evidence to us as part of the record. This proceeding was brought under G. L. c. 60, § 65,[1] as amended by St. 1938, c. 305. See also G. L. c. 60, §§ 66–69 (as amended respectively through St. 1935, c. 224, §§ 1, 2; St. 1935, c. 414, § 3; St. 1945, c. 226, § 1). The Land Court has exclusive jurisdiction. G. L. c. 60, § 64; c. 185, § 1 (b), as amended by St. 1935, c. 318, § 3. The practice in such a proceeding is to conform to that in land registration. See G. L. c. 60, § 75 (as amended through St. 1936, c. 189, § 1); *Boston* v. *Lynch,* 304 Mass.

---

[1] Section 65, as thus amended, reads: "After two years from a . . . taking of land for taxes, except as provided in section sixty-two [governing redemption of land taken for taxes], whoever then holds the title . . . may bring a petition in the land court for the foreclosure of all rights of redemption . . . . Such petition shall be . . . in the form . . . prescribed by said court . . . ."

272, 273–274, holding (1) that in a petition under § 65 an appeal may be taken by a party aggrieved "by any order decisive of the case founded upon matter of law apparent on the record" in accordance with G. L. c. 231, §§ 96[2], 142[3]; see G. L. c. 185, § 15; and (2) that "[s]uch an appeal raises only questions of law, but [that] the facts stated in the decision of the Land Court are generally deemed part of the record." See *Harrington* v. *Anderson,* 316 Mass. 187, 192–193. *Lowell* v. *Marden & Murphy, Inc.* 321 Mass. 597, 602–603, app. dism. and cert. den. 332 U. S. 850, left undecided the question whether, in a proceeding under § 65, the transcript of testimony is a part of the record on appeal. Foreclosure of a tax title, a security title, does resemble in some respects an equitable proceeding to foreclose a mortgage. See *Lynn Inst. for Sav.* v. *Taff,* 314 Mass. 380, 383. See also *Wareham Sav. Bank* v. *Partridge,* 317 Mass. 83, 84; Pomeroy, Equity Jurisprudence (5th ed.) §§ 240, 1227, 1413. Nevertheless, we find nothing to indicate that St. 1915, c. 237, §§ 4–14, which gave to the Land Court jurisdiction of tax title foreclosures, was intended to grant to that court equitable jurisdiction. The legislative history indicates that no "novel proceedings" were contemplated.[4] We think that the present appeal is governed by the usual procedure at law under c. 231, § 96 (see also c. 185, § 15), despite some provisions (§§ 5–7) in the 1915 statute which have the appearance of equitable proceedings. See G. L. c. 60, §§ 68–70, as amended; c. 185, § 25 (as amended by St. 1931, c. 387, § 2). See also *McCarthy* v. *Lane,* 301 Mass. 125, 127; *Humphrey* v. *Walker,* 314 Mass. 552, 553; *Marshall* v. *Francis,* 327 Mass. 702, 703. Cf. as to matters within the Land Court's concurrent equity jurisdiction, *Cowden* v. *Cutting,* 339 Mass. 164.

2. It is not clear that the Land Court judge could properly pass upon whether the locus was exempt under G. L. c. 59,

---

[2] As amended through St. 1928, c. 306, § 2.

[3] As amended through St. 1935, c. 318, § 7.

[4] See report of the special commission appointed under Res. 1914, c. 121, found in 1915 House Doc. No. 1600, pp. 17–22, 31 et seq.; Nichols, Taxation in Massachusetts (3d ed.) 416–423.

§ 5, Third,[5] for the record does not establish that the locus was the only real estate in Norwood owned by the association in each of the years covered by the tax title account. If the association owned any taxable real estate in Norwood, then inclusion of this land (even if it was exempt under cl. Third) in the basis of the tax made the tax merely excessive. For relief against an excessive tax the remedy is by application for abatement under G. L. c. 59, § 59, as amended. See *St. James Educ. Inst.* v. *Salem*, 153 Mass. 185, 186; *Harrington* v. *Glidden*, 179 Mass. 486, 491–494; *Sears* v. *Nahant*, 221 Mass. 435, 436; *Whitney* v. *Tax Commr.* 234 Mass. 188, 191; *Central Natl. Bank* v. *Lynn*, 259 Mass. 1, 6–7; *S. C.* 266 Mass. 145; *Wynn* v. *Assessors of Boston*, 281 Mass. 245, 248; *Codman* v. *Assessors of Westwood*, 309 Mass. 433, 435–436; *Hairenik Assn. Inc.* v. *Boston*, 313 Mass. 274, 278; *Lowell* v. *Marden & Murphy, Inc.* 321 Mass. 597, 598. See also *Commonwealth Inv. Co.* v. *Brookline*, 268 Mass. 32, 34. Where a taxpayer owns in the town no real estate subject to taxation, the tax is wholly void if assessed only upon exempt property. The remedy by abatement is available. (See *Milford Water Co.* v. *Hopkinton*, 192 Mass. 491, 497–498; *Thayer Academy* v. *Assessors of Braintree*, 232 Mass. 402, 406–407; *Assessors of Everett* v. *General Elec. Co.* 330 Mass. 464, 468–469; Nichols, Taxation in Massachusetts [3d ed.] 321–324.) Such a void tax, however, may also be recovered by an action under G. L. c. 60, § 98, provided, of course, that the strict requirements of that section are satisfied. See *Massachusetts Gen. Hosp.* v. *Somerville*, 101 Mass. 319, 326; *Masonic Educ. & Charity Trust* v. *Boston*, 201 Mass. 320, 326; Nichols, Taxation in Massa-

---

[5] Section 5 reads, in part, "The following property . . . shall be exempt from taxation . . . Third,. Personal property of literary, benevolent, charitable and scientific institutions . . . incorporated in the commonwealth, the real estate owned and occupied by them . . . for the purposes for which they are incorporated, and [for a limited time] real estate purchased by them with the purpose of removal thereto . . . except as follows: (a) If any of the income . . . of the . . . corporation is divided among the . . . members, or is used . . . for other than literary, educational, benevolent, charitable, scientific or religious purposes, its property shall not be exempt. . . ."

The section was materially revised by. St. 1957, c. 500, § 1, effective (see § 2) January 1, 1958, and thus not applicable to this case.

chusetts (3d ed.) 444–451. See also *Tobey* v. *Kip*, 214 Mass. 477, 478; *Streeter* v. *Worcester*, 336 Mass. 469, 470–471 (tax assessed to wrong person). Although various practical considerations might lead to remitting a taxpayer, even in the case of a void tax, to the remedy under c. 59, § 59, the decided cases establish that, under existing legislation, there is available at least the remedy under c. 60, § 98.

We think that essentially that remedy may be asserted as a defence (see c. 60, § 70, as amended by St. 1935, c. 224, § 5) in foreclosure proceedings under c. 60, § 65, in order to avoid circuity of action. No public advantage will be served by forcing the taxpayer to redeem the property from the tax title and thereafter to recover the redemption payment, under c. 60, § 98. See *Tobey* v. *Kip*, 214 Mass. 477, 478. Accordingly, if the taxes here assessed in any year were void because the association had no taxable property in Norwood on the assessment date in that year, and if the whole of the locus (see *All Saints Parish* v. *Brookline*, 178 Mass. 404, 410; cf. *Shruhan* v. *Revere*, 298 Mass. 12, 15) was exempt in that year, the association could establish these facts and have the void tax or taxes eliminated from the tax title account and from the payments necessary for redemption under c. 60, § 68. Because the trial judge considered on the merits whether the land held in tax title was exempt, we assume that there was no other real property in Norwood taxed to the association in at least some years.

3. Upon this record, the association has not established its defence that any of the taxes assessed upon the locus were upon exempt property and thus void. The evidence is not before us. The decision does not purport to rest wholly on specific findings or to set out all the material evidence. Thus we do not even have the basis, which could be afforded by a bill of exceptions, of determining whether the judge's conclusions were warranted by the evidence. See *Bacon* v. *Kenneson*, 290 Mass. 14, 15; *Humphrey* v. *Walker*, 314 Mass. 552, 553. Cf. *Marshall* v. *Francis*, 332 Mass. 282, 289.

We assume (without deciding) that a corporation, in fact operated dominantly for civic purposes of the general type

set out in the association's charter, owning and occupying land to provide substantially at cost to a significant segment of the public opportunities for wholesome outdoor recreation and instruction in swimming in pleasant surroundings would not be taxable upon the real estate so owned and occupied.[6]  Exemption from taxation, however, is to be strictly construed.  A corporation claiming that its property is exempt under § 5, Third, has the burden of proving that it comes within the exemption, and that it is in fact operated as a public charity of a type described in cl. Third.  See *American Inst. for Economic Research* v. *Assessors of Great Barrington,* 324 Mass. 509, 512–514.  The Land Court judge may have concluded, on evidence which we have not seen as well as on that described, that the association was not dominantly operated for a public charitable purpose;  that it was holding real estate not acquired for exempt purposes but to reduce taxes for a business corporation;  that the real estate prior to January 1, 1958 (when St. 1957, c. 500, § 1, became effective;  see footnote 5, *supra*), in some years at least was not owned and occupied by the association but was occupied by the Red Cross (see *Brockton Knights of Columbus Bldg. Assn. Inc.* v. *Assessors of Brockton,* 321 Mass. 110, 114);  or that some of the corporation's income was used for nonexempt purposes.  On this record, nothing appears which establishes that the judge's ultimate conclusion was incorrect.  See *Rindo* v. *Bourassa,* 337 Mass. 768.

*Decision affirmed.*

---

[6] See G. L. c. 59, § 5, Third; *Emerson* v. *Milton Academy,* 185 Mass. 414, 417–418;  *Amherst College* v. *Assessors of Amherst,* 193 Mass. 168, 172–174, 178;  *Little* v. *Newburyport,* 210 Mass. 414, 416–418;  *Wheaton College* v. *Norton,* 232 Mass. 141, 148–149;  *Springfield Y. M. C. A.* v. *Assessors of Springfield,* 284 Mass. 1, 5–8;  *Assessors of Quincy* v. *Cunningham Foundation,* 305 Mass. 411, 412–415;  *Assessors of Dover* v. *Dominican Fathers Province of St. Joseph,* 334 Mass. 530, 540–541.