CITY OF BOSTON *vs.* DOROTHY GORDON
(and a companion case[1]).

Suffolk.   March 7, 1961. — May 8, 1961.

Present: WILKINS, C.J., WILLIAMS, WHITTEMORE, CUTTER,
& SPIEGEL, JJ.

*Taxation,* Real estate tax: collection by suit, personal obligation of person assessed, tax title account, foreclosure of tax title. *Limitations, Statute of. Evidence,* Relevancy and materiality, Of value, Assessors' valuation.

St. 1946, c. 251, § 1, amending G. L. c. 60, § 35, by omitting from the provision therein which authorized a collector of taxes to maintain an action for unpaid taxes against the person assessed the phrase "in the same manner as for his own debt," did not eliminate the statute of limitations as a bar to such an action.   [590–591]

---

1 City of Boston *vs.* Woodward Apartments, Inc.

Boston *v.* Gordon.

The statute of limitations, G. L. c. 260, § 2, barred recovery in personam against a landowner in an action by a municipality under c. 60, § 35, as amended by St. 1946, c. 251, § 1, to recover a tax assessed to him and committed to the collector, but "due and payable" more than six years prior to the commencement of the action, even though a valid lien on the land might be enforced. [591]

A Land Court decree foreclosing a tax title on land did not affect the landowner's personal liability for a tax assessed to him as of a January 1 before the decree but not at the time of the decree included in the tax title account by certification under G. L. c. 60, § 61, although it was subsequently so certified. [591]

The primary liability to pay a real estate tax is upon the person assessed; remedies for collection of the tax set out in G. L. c. 60 are all subsidiary to and in aid of enforcement of the primary liability. [592]

Foreclosure by a municipality of a tax title does not amount to a conclusive election by it to use only that remedy to enforce payment of the items included in the tax title account. [592–593]

A Land Court decree foreclosing a tax title on land discharged the liabilities included in the tax title account at the time of the decree only to the extent of the fair market value of the land at that time. [593]

At the trial of an action by a municipality under G. L. c. 60, § 35, to recover unpaid real estate taxes included in a tax title account at the time of a Land Court decree foreclosing the tax title, which discharged such tax liabilities only to the extent of the fair market value of the land at that time, exclusion of opinion evidence of a qualified expert witness as to such value and evidence of the actual sale price of the property a few months later, no change affecting the property having taken place in the interval, was error prejudicial to the municipality; the fact that the assessed value as of the January 1 preceding the decree was far in excess of the value shown by the excluded evidence did not preclude the municipality from introducing it. [593–594]

The words "in the order in which they were committed to the collector" in G. L. c. 60, § 43, as amended through St. 1935, c. 236, are applicable to "taxes assessed on account of the municipality." [595–596]

In an action by a city under G. L. c. 60, § 35, to recover unpaid real estate taxes assessed to the defendant and included in a tax title account also including taxes assessed to a previous owner, the fair market value of the property at the time of a Land Court decree foreclosing the tax title should be applied to the taxes included in account at that time in the chronological order of their commitment to the collector for the purpose of determining the portion of such fair market value to be credited to the taxes assessed to the defendant. [595, 596–597]

Two ACTIONS OF CONTRACT. Writs in the Superior Court dated October 17, 1958.

The actions were heard by *J. V. Sullivan*, J.

*William H. Kerr*, for the plaintiff.

*Joseph B. Abrams*, (*Robert T. Abrams* with him,) for the defendants.

CUTTER, J.  These are two actions by the city, brought
by writs dated October 17, 1958, to recover a balance al-
leged to be due on certain real estate taxes from the tax-
payers named in the actions respectively.  The cases were
consolidated for trial.  Certain facts were stipulated.  The
city offered evidence mentioned below which was excluded,
subject to the city's exception.  The trial judge found the
facts to be as stated in the stipulation, ordered judgment
for the defendant in each action, stayed all further pro-
ceedings, and reported "the cases, including the exclusion
of the proferred testimony and the propriety of the orders
of judgment," for the determination of this court.  The
facts are stated on the basis of the stipulation.

Real estate (the locus) on Union Park Street in Boston
was owned in fact and as of record by Dorothy Gordon
from November 6, 1941, to December 31, 1952, and by
Woodward Apartments, Inc. (Apartments), from Decem-
ber 31, 1952, to February 4, 1958.  In their annual valua-
tion list for each of the years 1948 to 1958, the assessors of
Boston included the locus at a valuation of $34,500 and
assessed a tax on the locus as of January 1 of such year to
the owner on that date.  During the middle part of each
such year, the assessors committed their annual tax list
(including the tax thus assessed) with their warrant to the
collector, who thereafter made demand on the assessed
owner for the payment of the tax together with any interest
and costs.  Each such tax remains unpaid, except so far as
foreclosure of the tax title may have operated as payment.

On June 28, 1950, by recorded instrument of taking, the
Boston collector took (G. L. c. 60, § 53, as amended through
St. 1933, c. 164, § 3[2]) the locus for nonpayment of the 1948
taxes.  Upon the city's books in the custody of its treas-
urer, there was set up a separate tax title account for the
locus "to which was charged . . . the . . . 1948 tax . . .
and to which were subsequently added . . . upon certifica-

2 Section 53 reads in part, "If a tax on land is not paid within fourteen
days after demand therefor and remains unpaid at the date of taking, the
collector may take such land for the town . . . ."

tion" (see G. L. c. 60, § 61, as amended through St. 1936, c. 93, § 1) the taxes for the years 1949 to 1956, inclusive. On February 4, 1958, upon a petition filed by the city on June 30, 1953, the Land Court entered a decree foreclosing (see G. L. c. 60, § 64 and § 65, as amended through St. 1938, c. 305; *Norwood* v. *Norwood Civic Assn.* 340 Mass. 518, 522) all rights to redeem from the tax taking. At the time of the entry of this decree, neither the 1957 tax nor the 1958 tax had been certified under § 61, but this was subsequently done. During 1958 there was no material change in, or affecting, the locus.

1. The first question for decision is whether any recovery sought is barred by the statute of limitations.[3] The actions are brought under G. L. c. 60, § 35, as amended by St. 1946, c. 251, § 1.[4] See Nichols, Taxation in Massachusetts (3d ed.) pp. 381–382. Under G. L. c. 59, § 57, both as amended through St. 1947, c. 522, § 1, and as later amended by St. 1949, c. 265, § 1, "bills for real estate . . . taxes" were to be sent out not later than June 14 of each year "and shall be due and payable" on July 1.

In the action against Dorothy Gordon the writ was dated more than six years after July 1, 1952, when the 1952 tax (the latest tax owed by her) became due and payable. If the six year statute of limitations contained in G. L. c. 260, § 2, as from time to time amended, is applicable to actions under G. L. c. 60, § 35, brought by Boston after the 1946 amendment, there can be no recovery in the action against her. The action against Apartments was brought within

[3] We assume that the defendant Gordon relies, with respect to the taxes for 1948 and 1949, on G. L. c. 260, § 2, and, with respect to the taxes for 1950, 1951, and 1952, upon § 2, as amended by St. 1948, c. 274, § 1. Both prior to and after the 1948 amendment, § 2 provided that actions of contract of the type here involved shall "be commenced only within six years next after the cause of action accrues."

[4] Section 35, as amended by St. 1938, c. 150, § 2, read, "If a tax remains unpaid *for three months after commitment to the collector*, he may maintain an action in his own name against the person assessed therefor . . . *in the same manner as for his own debt*" (emphasis supplied). After the 1946 amendment, § 35 read, "If a tax which has been committed to a collector remains unpaid after it has become due and payable, it may be recovered in an action of contract or in any other appropriate . . . proceeding brought by the collector either in his own name or in the name of the town against the person assessed for such tax."

six years of the due date of each of the taxes recovery of which is sought in that action.

Prior to the 1946 amendment of § 35, the six year statute of limitations contained in G. L. c. 260, § 2, was applicable to an action by a collector under § 35. See *Rich* v. *Tuckerman,* 121 Mass. 222, 223, and *Bartlett* v. *Tufts,* 241 Mass. 96, 99, where this result was reached with respect to the short statute of limitations applying to debts of a decedent, now found in G. L. c. 197, § 9, as amended by St. 1954, c. 552, § 1. Cf. *Milford* v. *Casamassa,* 339 Mass. 702, 704–707. The city contends that the 1946 omission (see footnote 4, *supra*) from § 35 of the italicized words, "in the same manner as for his own debt," was intended to make statutes of limitation governing actions by individuals inapplicable to actions under § 35. The last five words, thus omitted in 1946, were much relied upon in 1876 in *Rich* v. *Tuckerman,* 121 Mass. 222, 223, in reaching the conclusion that statutes of limitation generally applicable to actions against administrators applied to actions brought under Gen. St. c. 12, §§ 19, 20, which in part were predecessors of G. L. c. 60, § 35, and contained language similar to that found in § 35 prior to the 1946 amendment.

If the 1946 amendment was intended to make actions under § 35 no longer subject to statutes of limitation, that intention is not clearly expressed. The legislative history of the 1946 amendment[5] gives little support to the city's contention. The reasons for the 1946 change in the particular language of § 35 upon which the city relies "are too obscure to justify much reliance on . . . [it] as an aid to

---

[5] The bill which became St. 1946, c. 251, was introduced as 1946 House Doc. No. 188 by a petition of Nathaniel M. Nichols, described in the petition as Secretary of the Massachusetts Collectors and Treasurers Association, for legislation "that the time be advanced when a collector may bring suit or other court proceedings to enforce collection of local taxes and otherwise to facilitate the collection of such taxes by court proceedings." The bill, by the omission of the words "for three months after commitment to the collector" (see first italicized phrase in footnote 4, *supra*) from the prior form of § 35, did serve to advance the date upon which suit could be brought to the date when the tax has become "due and payable," unless the tax is committed to the collector later. There is no indication in the legislative papers that the omission of the words "in the same manner as for his own debt" had special significance.

interpretation." See *Milford* v. *Casamassa,* 339 Mass. 702, 707. If the Legislature had intended such an important change in the effect of § 35 as that suggested by the city, it would have been natural for it to express its intention plainly. Cf. situation considered in *State Tax Commn.* v. *John Hancock Mut. Life Ins. Co.* 341 Mass. 555, 561. We hold that the statute of limitations contained in c. 260, § 2, as amended, bars any recovery in personam against the defendant Gordon on her personal liability, even though liens for such taxes, otherwise valid, may be enforced against the land.

2. Recovery of the 1957 and 1958 taxes from Apartments is not barred by the foreclosure of the tax title on February 4, 1958. These taxes were not certified by the city collector to the city treasurer under G. L. c. 60, § 61 (as amended through St. 1936, c. 93, § 1), until after the foreclosure decree. On the date of the decree they formed no part of the tax title account. Their certification after February 4, 1958, did not operate to extinguish Apartments' personal liability for these taxes. See *Boston Five Cents Sav. Bank* v. *Boston,* 318 Mass. 183, 186–190. Until the decree of foreclosure, Apartments could have redeemed the locus from the tax title (see § 61) upon payment "of the tax for which the estate was . . . taken and of such subsequent taxes *as shall have been* . . . *certified,* together with costs and interest" (emphasis supplied). The city's tax title until foreclosure under §§ 64 and 65 in effect was security for the payment of the amount in the tax title account from time to time. The foreclosure had no effect upon personal liability for later taxes not certified on or before the date of the decree. The collector was not thereby deprived of his alternative remedy by suit under § 35 to collect the 1957 and 1958 taxes. The statutory remedies for collection of the tax are cumulative. See the *Boston Five Cents Sav. Bank* case, *supra,* at p. 188. See also *Boston* v. *DuWors,* 340 Mass. 402, 404. The city, upon the facts found, is entitled to recover the 1957 and 1958 taxes from Apartments.

3.    We next consider whether foreclosure of the tax title operated as complete payment of the taxes and other items then charged to the tax title account.    Although, under G. L. c. 60, § 37 (as amended through St. 1943, c. 478, § 1), "there is a lien upon the land for the assessed tax, the primary liability to pay is upon the person assessed."    See *Boston Five Cents Sav. Bank* v. *Boston,* 318 Mass. 183, 188. The various methods set out in c. 60 of enforcing the tax or the lien (see Nichols, Taxation in Massachusetts [3d ed.] pp. 369–424; Hardy, Municipal Law & Practice, §§ 910– 931; Swaim, Crocker's Notes on Common Forms [7th ed.] §§ 971–984), viz. by demand (c. 60, § 16), distress (§ 24), imprisonment (§ 29), suit (§ 35), or sale or taking (§§ 37– 65), are all subsidiary to and in aid of the enforcement of the primary liability.    The foreclosure (see §§ 65, 69, 69A) of a tax title obtained by a taking (under § 53) merely applies to that liability the security afforded by the tax title. Although the collector obtains credit upon his bond under § 95 (as amended through St. 1949, c. 202) for "the amount of the taxes and costs, charges and fees where land has been purchased or taken by the town for non-payment of taxes; and upon certification in accordance with" § 61, for "the amount of subsequent taxes which have become part of the terms of redemption in any tax title held by the town," these circumstances (see *Boston Five Cents Sav. Bank* case, *supra,* at p. 189) are "mere . . . internal municipal regulation not affecting the rights of the city against a taxpayer in default." Nothing in the statutes purports to make the foreclosure of the tax title either a conclusive election by the city to use one only of its cumulative remedies, or, in the case of a taking under § 53,[6] a full

---

[6] Where there is a foreclosure of a tax title created by a tax sale to a person other than the town (see § 43, as amended through St. 1935, c. 236) or of a tax title sold by the town (under § 52, as amended through St. 1936, c. 392, § 1), the town will have received payment, in the former case, of the amount of the taxes, interest, and charges for which the property was sold, and, in the latter case, of the amount in the tax title account at the time of the sale of the tax title plus interest.    Where a town purchases the tax title at a tax sale (see § 48, as amended through St. 1933, c. 325, § 5), the statutory treatment of the taxes and charges constituting the town's purchase price in substance amounts merely to setting up the tax title account as a matter of town bookkeeping.    These statutory provisions do not indicate to us that the foreclosure of a § 53 tax title is a discharge of the personal liabilities reflected in the tax title account.

satisfaction of the taxes and charges certified under § 61 for which the tax title has been security.

The foreclosure of a tax title is analogous to the foreclosure of a mortgage by entry. See G. L. c. 244, § 1. See also *Grabiel* v. *Michelson,* 297 Mass. 227, 229; *Worcester* v. *Bennett,* 310 Mass. 400, 403–404. That a deficiency (existing after realizing upon the security) may be recovered in respect of a mortgage lends support to permitting recovery of a similar deficiency existing after foreclosure of a tax title. When a mortgagee takes possession by entry his act is comparable to a town's taking of a tax title under c. 60, § 53. When a mortgage is foreclosed by entry and possession for three years, the mortgage debt is discharged "to the extent of the value of the land at that time." See *Morse* v. *Merritt,* 110 Mass. 458, 460; *Draper* v. *Mann,* 117 Mass. 439, 441; *Hadley Falls Trust Co.* v. *United States,* 110 F. 2d. 887, 889 (1st Cir.), reversing in part 22 F. Supp. 346, 351–352 (D. Mass.). See also Swaim, Crocker's Notes on Common Forms (7th ed.) §§ 580–583, 588–589, 591. If the mortgagee is not satisfied, he may recover any deficiency, although under G. L. c. 244, § 35, the foreclosure is thereby reopened.[7] See *Joyner* v. *Lenox Sav. Bank,* 322 Mass. 46, 54. If, however, there is compliance with G. L. c. 244, §§ 17A–17C (inserted by St. 1945, c. 604, § 1), deficiencies in satisfying the mortgage debt may be recovered whether foreclosure is as a result of entry or by sale.

We hold that foreclosure of the tax title to the locus operated to discharge the liabilities then reflected in the tax title account only to the extent of the fair market value of the locus on the date of the foreclosure decree. It follows that the city was entitled to introduce (a) competent opinion evidence that the fair market value of the locus was $7,500, on the date of the foreclosure decree, February 4, 1958, and (b) evidence of the actual sale of the locus for $7,500 on July 15, 1958.

The trial judge's report indicates that the expert wit-

---

[7] This reopening rests upon the express language of § 35. There is no comparable statutory provision relating to tax titles, except to the limited extent provided by G. L. c. 60, § 69A (see also §§ 69, 76), perhaps because of the special public interest in the complete and effective collection of taxes.

ness was qualified. The sale would be relevant, since it was agreed that no change affecting the locus took place during 1958. The exclusion of each piece of evidence was prejudicial error. See *Brigham* v. *Evans,* 113 Mass. 538, 540–541; *Atherton* v. *Emerson,* 199 Mass. 199, 210; *Tremont & Suffolk Mills* v. *Lowell,* 271 Mass. 1, 14–15; Nichols, Taxation in Massachusetts (3d ed.) pp. 213, 304–306. See also *Brush Hill Dev. Inc.* v. *Commonwealth,* 338 Mass. 359, 364–365.

Apartments, relying upon *Gordon* v. *Lewitsky,* 333 Mass. 379, 381, contends that it would be improper to permit the city to present testimony that land, which was assessed for $34,500 as of January 1, 1958, had a market value of only $7,500 on February 4, 1958, the date of the foreclosure decree. Assessors are public officers and not the agents of the city. See *Cox* v. *Segee,* 206 Mass. 380, 382. Their acts are not admissions conclusive upon the city in this situation. The city's position involves no inconsistency which would require the exclusion of evidence of market value. Of course, the finder of the facts should properly give substantial weight to the circumstance that one group of public officers (the assessors) is contending that the value of land is high when it is to the city's advantage so to contend, and that the city represented by its collector is taking a contrary position when that is to the city's advantage. This action for collection of taxes is not the proper litigation in which to test, for assessment purposes, the correctness of the assessors' valuations.[8] Nevertheless, in proceedings to collect taxes, assessments upon which those taxes are based should be admitted in evidence where it is necessary to show (for a purpose connected with those taxes) the fair cash or market value of the assessed property as of a date reasonably close to the assessment day. See *Common-*

---

[8] The taxpayer's exclusive remedy to obtain a reduction of his assessment is by proceedings under G. L. c. 59, § 59 (as amended through St. 1946, c. 199, § 1), and related statutory provisions. Cf. situation with respect to a void tax discussed in *Norwood* v. *Norwood Civic Assn.* 340 Mass. 518, 523–524. A taxpayer cannot raise overvaluation as a defence to a petition to foreclose a tax title. See *Boston* v. *DuWors,* 339 Mass. 773; *Boston* v. *DuWors,* 340 Mass. 402, 404. The city's interest in a correct assessment should be protected by correct and intelligent assessment in the first instance.

*wealth* v. *Heffron,* 102 Mass. 148, 151–152; *Bay State Wholesale Drug Co.* v. *Whitman,* 280 Mass. 188, 191–192. See also *Howe* v. *Ware,* 330 Mass. 487, 488–489. Cf. *Bennett* v. *Brookline Redev. Authy. ante,* 418.

4. In view of what has been said, the city is entitled to maintain its action against Apartments for (a) the amount of the items reflected in the tax title account for which Apartments is personally liable, together with interest and costs related to those items, *less* (b) that portion of the fair market value of the locus on the date of the foreclosure decree which is properly to be applied to payment of the items for which Apartments is personally liable. It thus becomes necessary to determine the basis for application of the fair market value of the locus on the date of foreclosure.

The most pertinent statutory provision is G. L. c. 60, § 43 (as amended through St. 1935, c. 236[9]), the last sentence of which was added by St. 1935, c. 236. The amendment was recommended (see 1935 House Doc. No. 10, pp. 5–6) by the Commissioner of Corporations and Taxation, "to make . . . unmistakable upon the collector's sale . . . the order of distribution of money received upon sale by the municipality or redemption." Difficulty had apparently been encountered in determining "priority of title or the disposition of funds upon sale." It seems that the amendment was intended to provide definitely "the sequence in which the proceeds were to be applied." See Nichols, Taxation in Massachusetts (3d ed.) p. 395. If in § 43, as quoted in footnote 9, *supra,* the italicized words "in the

---

[9] Section 43, as amended, provides that, in connection with a tax sale, the "collector, on behalf of such municipality and district [i.e. a taxing district wholly or partly within the municipality] . . . shall make a single . . . taking . . . for all unpaid taxes [i.e. all taxes which constitute a lien on the land assessed and which are lawfully placed upon the tax bill] . . . . If the municipality . . . takes the land in such case, the proceeds received upon redemption of the tax title or upon a sale following foreclosure of the right of redemption shall be applied first to taxes assessed on account of the municipality . . . including interest thereon, and all costs, charges and terms of redemption in any way resulting from such . . . taking, second to any district taxes, including interest thereon, *in the order in which they were committed to the collector,* and the balance to other assessments or portions thereof, rates and charges, including interest thereon, in the order in which they were committed to the collector" (emphasis supplied).

order in which they were committed to the collector" are construed as applying to the "taxes assessed on account of the municipality" (mentioned in the section after the word "first") as well as to "any district taxes" (mentioned following the word "second") the statutory priorities will be clear and complete. The italicized words were inserted by the House Committee on Bills in the Third Reading when it substituted 1935 House Bill No. 2012 for an earlier draft of the 1935 Act (1935 House Doc. No. 21; see 1935 House Journal, p. 806). There is no apparent practical reason, or explanation in the legislative history, for making the "order in which they were committed to the collector" applicable to district taxes and not to municipal taxes, if such a differentiation was intended. Although the punctuation and language are ambiguous, the amendment as a whole indicates that the Legislature intended to provide a comprehensive program of priorities for dealing with the proceeds of redemptions, foreclosures, and later sales of foreclosed land, and that within each category of taxes all such proceeds were intended to be applied in the same sequence. Any other interpretation would leave the matter confused and uncertain so far as it relates to municipal taxes. Accordingly, we hold that the fair market value of the locus on February 4, 1958, is to be applied first to the municipal taxes reflected in the tax title account in the chronological order of their commitment to the collector. The purpose of the statute, as stated above, makes inapplicable the general rules of interpretation discussed in *Selectmen of Topsfield* v. *State Racing Commn.* 324 Mass. 309, 312–313, and in *Iannelle* v. *Fire Commr. of Boston,* 331 Mass. 250, 252–253. The case of *Chadwick* v. *Cambridge,* 230 Mass. 580, 582–583, which was discussed at the arguments, has been affected by the amendments now found in § 61, and is not a controlling guide to the sequence of application of the value of the locus as of the date of the foreclosure of the tax title. See Nichols, Taxation in Massachusetts (3d ed.) pp. 415–416; 30 Mass. L. Q. No. 2, pp. 42–48. See also *Boston* v. *Barry,* 315 Mass. 572, 575 et seq. The proceeds of the secu-

rity of the tax title must be applied in accordance with the rule stated in § 43, as now construed.

5. The order for judgment for the defendant Dorothy Gordon is affirmed. The order for judgment for Apartments is reversed and the case against Apartments is remanded for further proceedings in accordance with this opinion.

*So ordered.*